·THE STATE, ALFRED W. BOOTH ET AL., PROSECUTORS, v.
THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE.

· 1. A resolution to readvertise for bids for work to be done on a street in
Bayonne, because the lowest bid is in excess of the estimate therefor
made by the commissioners of assessment, is one affecting the interests
of the city, and has no validity unless approved by the mayor or
passed over his veto as provided in the city charter.

·2. In this case such a resolution not having been so approved, or passed
over the veto of the mayor, never became operative, and it is not,
therefore, necessary to decide as to its effect if it had ever become
operative.

.3. The power of the council over streets is a continuing one, and bids for
work thereon presented to the council may be acted upon by that
body in the present case, notwithstanding an election had intervened
in which one-half of the members thereof were to be voted for.

-4. The difference in this case between the estimated cost and the lowest
bid is not so great as to warrant the inference by this court, from that
fact alone, that it was fraudulent or that its acceptance by the council
does great injustice to the city, its city council and mayor having both
finally exercised their discretion in accepting it, after the matter had
been fully presented to them.

On *certiorari* to review a resolution awarding a contract to
Martin Murray for the completion of West Sixth street.

Argued at November Term, 1893, before Justices DIXON
:and ABBETT.

For the plaintiffs, *Collins & Corbin.*

For the defendants, *James Benny.*

The opinion of the court was delivered by

ABBETT, J. An ordinance was passed "To improve West Sixth street from Avenue A extending to Avenue D." It was approved January 4th, 1893. It provided for "macadam pavement nine inches in depth, properly and thoroughly rolled and compacted." Upon advertisement sealed proposals were received April 4th, 1893, for said work. The bids for the work varied from $16,509.40 to $14,600. The commissioners of assessment's estimate was $13,983.73. Martin Murray was the lowest bidder. On April 18th, the committee of the whole reported to the council that "Mr. Murray being the lowest bidder, the committee find the amount of his bid to exceed the estimated cost, as shown by the commissioners of assessment's preliminary map, about $1,500, and since complaint has been made by property-owners against having the work proceed at present prices bid for the same, they recommend that the city clerk readvertise for bids for the work, to be received at the next regular meeting." The report of the committee was adopted by a vote of five to three. This action of the council was presented to the mayor, April 21st, 1893, who, on April 29th, vetoed the same, which veto was presented to the council at its meeting May 2d. William C. Farr was the mayor for the term preceding April 24th, 1893, and was re-elected and qualified April 24th, 1893. The mayor's term is for two years, and commences on the last Monday of April, so that Mr. Farr was mayor during all the periods in question, either under his first or second term of office. A charter election is held annually, on the second Tuesday in April (*Charter*, § 5), when one councilman from each ward is elected (being one-half of the whole number) for a term of two years.

The veto of the mayor was referred to the committee on water, streets and drainage, who gave the parties interested a hearing, and thereafter recommended that the contract be awarded to Martin Murray, the lowest regular bidder. This report was received and adopted by the council May 16th,

1893. The *certiorari* was allowed May 20th, and brings up this action of the council of May 16th.

The reasons in *certiorari* raise the question as to the right of the mayor to act upon this resolution at all, either before or after April 24th, and the right of the council which was in existence May 16th to award a contract upon the lowest bid after their predecessors in office had ordered the work to be readvertised for bids. They also claim that the plans and specifications upon which the bid was based, which it is proposed to incorporate into a contract, are not in accordance with the petition for the improvement or with the ordinance, and that the resolution is an unreasonable exercise of the board's discretion and an abuse of its authority.

The city, under its charter, was vested with power to pass the ordinance for the improvement of this street and to award the contract for the work to Murray, the lowest *bona fide* bidder. The question whether the city council had exhausted its power on April 18th, when it directed a readvertisement for bids, depends upon the effect of that action and whether the power to act in reference to this improvement was a continuous one or expired every year with the old council. The power to grade and improve streets, like other legislative powers, is a continuing one unless the contrary be indicated. ·2 *Dill. Mun. Corp.*, § 686, *ch.* XVIII., and cases cited. If the action of the council, April 18th, was subject to the veto of the mayor, it had no validity whatever until presented to him and approved by him, or had been left in his hands ten days, and passed over his veto by a two-thirds vote of the council. The charter provides that it does not "take effect as a law" unless he approves it or it is thus passed over his veto. Whether it was a resolution that should go to him depends upon whether it was a resolution affecting the interest of the ·city. It is clearly such because the readvertising involved the expenditure of money by the city, and further, the wisdom of such action in this case depended upon the judgment ·of the council, subject to the review thereof by the mayor. If an honest bidder for a price that is not so unreasonable as

to warrant the presumption of fraud or great injustice to the city, finds that the city adopts a policy which is one directly opposite to that adopted by the Court of Errors and Appeals in reference to judicial sales (*Morrisse* v. *Inglis*, 1 *Dick. Ch. Rep.* 306, &c.), it will be apt to discourage competitive bidding for public work, and thus most seriously affect the interests of the city. We conclude, therefore, that this resolution of April 18th was one affecting the interests of the city and never had any validity whatever as a municipal act, because it was not approved by the mayor or passed over his veto. It is not necessary, in this case, to decide whether Mayor Farr had a right to veto this resolution after he entered upon his second term. It certainly was in his hands April 24th, 1893, when his first term expired, and it has no efficacy and cannot be considered as an act of the city, because it has never been approved by him or passed over his veto, either by the city council existing before or the one existing after April 24th, 1893. On May 16th (the resolution of April 18th never having had any legal efficacy) the city council passed the resolution which, on May 20th, was removed into this court. If it be said that this latter resolution has no efficacy because not approved by the mayor, the answer is that he has, by the charter, ten days for action thereon after it is presented to him, and that the writ of *certiorari* was prematurely applied for before the expiration of that time and has prevented his action thereon.

There can be no serious contention that, every time there is an annual charter election in the city of Bayonne, wherein one-half of the council go out of office and their successors are elected, all prior proceedings end and must be again commenced. The city council is a continuous body, and as to street improvements, the new city council can take up the proceedings where they were left by the old council and proceed to carry out the provisions of the charter in reference thereto. The legal condition of this street improvement on April 24th was that bids had been made for the work, and the resolution in reference to readvertising was in the hands

of the mayor, unacted upon. This resolution never became effective for the reasons already stated. The new council on May 16th took up this street improvement and awarded the contract to the lowest bidder. There is no evidence of fraud in this case affecting this bid. The preliminary estimate of the commissioners of assessment is not so much less than the bid of Murray as to warrant the conclusion that it was fraudulent or that it was grossly excessive. The court will not, therefore, set aside the award to Murray as an abuse of the discretion vested in the city council.

The objection that the plans and specifications on which the bid was made are not up to the standard of the petition and ordinance is not supported by the facts of this case. The only objection urged was in reference to the depth of the macadam. The petition calls for macadam nine inches in depth, properly and thoroughly rolled and compacted. The ordinance calls for exactly the same thing. In the official papers the notice to contractors was published, stating that sealed proposals would be received for the improvement of this street, and it was therein stated that this improvement consisted of grading, flagging, sewering and laying *macadam* pavement in said street. Murray bid for " macadam pavement." Cornelius Vreeland, a civil engineer of Bayonne, testifies as an expert, that the plans and specifications call for a portion of the street to be macadamized for a width of eighteen feet and a depth of nine inches, different sizes of stone. On being asked how he made up the nine inches, after stating that the first course of stone was to be five inches, he says : " On page 26 [of the specifications], under head of second course, to be spread evenly over the surface of the roadway to a depth necessary to bring it to the true grade and course, as shown in the plan." And he further testifies, as such expert, that the plan will show what the depth of the macadam will be under that specification. The plan, by scaling, shows this nine inches. Murray, under these circumstances, would be compelled to lay nine inches of macadam, as his bid was to do the work called for by the

improvement, and he would be charged with notice of what was in the ordinance, and that called for nine inches.

I find nothing in the reasons and the record and testimony to warrant the setting aside of the award of the contract to the lowest bidder.

The prosecutors' suit should be dismissed, with costs.