THE ERIE RAILROAD AND THE PATERSON AND RAMAPO
    RAILROAD COMPANY v. THE MAYOR AND ALDERMEN
    OF THE CITY OF PATERSON.

Argued March 6, 1907—Decided November 18, 1907.

On *certiorari*, brought to review an ordinance laying out a city street
    across the right of way of a railroad, it appeared that, according
    to the terms of the charter of the city, the membership of the
    board of aldermen, which was the governing board, changed on
    January 1st of each year, one-half of the members going out by
    expiration of term and newly-elected members taking their places;
    that every ordinance must be read three times before final passage,
    and not more than twice at any one meeting, and must be passed
    by a majority of all the members. It further appeared that the
    ordinance in question was read twice and ordered to a third read-
    ing before the board organized, January 1st, 1904, but was not
    finally passed by the board until after its reorganization on Janu-
    ary 1st, 1904, a new election having intervened, involving a change
    in the membership. It was *held* that the ordinance fell with the
    expiration of the board of 1903, as then organized, and that its
    attempted enactment later by the succeeding board was invalid.

On error to the Supreme Court, whose opinion is found in
43 *Vroom* 112. ·

For the plaintiff in error, *Edward F. Merrey*.

For the defendants in error, *Collins & Corbin*.

The opinion of the court was delivered by

HENDRICKSON, J.    This writ brings up for review a judg-
ment of the Supreme Court in a *certiorari* proceeding setting
aside as invalid an ordinance of the city of Paterson which
had for its object the laying out and opening of Sixth avenue
across the right of way of defendants in error. The reason
upon which the Supreme Court acted in reaching this result
was that the proposed street crossed the tracks of the prose-
cutors' railways used as a freight yard at grade, and thereby
deprived the companies of its beneficial use and compelled

them to transfer their business to another locality without legislative authority. The opinion of the court may be found in 43 *Vroom* 112. We think the ordinance was properly set aside, but because of the view we have taken as to another reason alleged by the prosecutors, we have not found it necessary to determine whether it should be set aside upon the ground which the Supreme Court adopted as the basis of its judgment, and upon that point we express no opinion.

The reason alluded to upon which we think the reversal should be sustained is this: That the ordinance in question was introduced in the board of aldermen in the year 1903, and passed its two preliminary readings by the board of that year, but was not passed and finally adopted by that board as then organized, but by the board of aldermen which was organized on January 1st, 1904, the prosecutors' contention being that the newly-organized board had no power to take up and adopt an ordinance which had been left unacted upon by a preceding board.

This was an ordinance to lay out and open a street in said city across the railroad right of way of the defendants in error under the charter of the city. *Pamph. L.* 1871, *p.* 848. The charter vests the legislative power of the corporation "in a board of aldermen, composed of two aldermen from each ward, divided into classes as heretofore" (*Id., p.* 816, § 21), and provides that every legislative act of the board shall be by ordinance passed by the majority of all its members, and further provides that "every ordinance shall be read three times before its final passage, and not more than twice at any one meeting of the board." *Id., p.* 817, § 24. At an annual election held on the second Monday in April, among the officers to be elected it is prescribed in the charter that "in and for each of the wards in said city" there should be chosen one alderman, who should hold his office for the term of two years (*Id., p.* 811, § 3), the effect being that one-half of the board would go out each year by expiration of term, giving place to the new members elected from the different wards. There is a further provision that the annual meeting of the board should be held at two o'clock in the afternoon, on the

third Monday in April in each year, when the board should proceed to elect by a majority vote one of the members thereof president, who should appoint all standing committees of the board, subject to its approval.

The question here raised is one of legislative construction. It should be stated that, pursuant to the provisions of an act approved February 28th, 1901 (*Pamph. L., p.* 43), the election for aldermen in Paterson thereafter occurred at the general election in November of each year, and the term of office of aldermen began on January 1st following. The question is, Was it the legislative intent that the board should be continuous in character for strictly legislative purposes, so that the newly-organized board could take up, as in this case, an unfinished act of legislation of the preceding board and finally adopt it? We think not. The restrictive words requiring each ordinance to be read three times before final passage are against such a construction. These same words appear in our own and other state constitutions as a restriction upon legislation. Their recognized purpose is to cause legislators to proceed in their action with caution and deliberation. *Cooley Const. Lim.* (*5th ed.*) 168. It will be perceived that this salutary purpose might be largely thwarted by such a construction where, as in this case, the charter provides for a possible change in the personnel of one-half of the members of the board each year. It must also be observed that such restrictions are mandatory and their observance essential to valid legislation. 1 *Dill. Mun. Corp.* 309; *Cooley Const. Lim.* 168, \*140, and note. We think, also, that the proviso for the annual meeting of the board for organization, appointment of committees, &c., is a further indication that the legislative year of the board began and terminated at the date of such annual meeting. And regard may be had, we think, in seeking the legislative intent, to the fact that in our state legislature, from which this charter emanated, the method of legislation which there prevails is such that every bill not finally passed into a law before that period falls with the expiration of the legislative year. In *State* v. *Rogers,* 27 *Vroom* 480, it was held that the senate, which each year or-

ganizes with two-thirds of the body holding over and one-third thereof newly elected, was no more a continuous body than was the assembly. See opinion of Chief Justice Beasley, *Id., p.* 626.

This view is further reinforced by the decision of this court in the recent case of *Gulnac* v. *Freeholders of Bergen, ante p.* 543. It was held in that case that a resolution of the board adopted at their last meeting in December, 1905, could not be rescinded by the succeeding board, which organized on January 1st, 1906, after an election had intervened involving a change in the membership. It was said by Mr. Justice Swayze, in delivering the opinion: "Although only a portion of the board of freeholders goes out of office each year, the body itself is not a continuous body." The same principle was involved in the case of *Bownes* v. *Meehan,* 16 *Vroom* 189, in the Supreme Court, Chief Justice Beasley delivering the opinion, where it was held that "an outgoing board of chosen freeholders cannot fill an office that will not become vacant during the term of their own official life."

It is contended on the part of the city that this view should not prevail, on the ground that the board of aldermen are a continuous body, and that the changes in the individuals who compose it have no effect upon it as an entity, nor to change its purpose, that of acting as an agent of the municipality it represents; that the whole act, from its inception to its completion, would be an act of the city of Paterson, and counsel has cited in that behalf 1 *Dill. Mun. Corp.* (4th ed.) 341, ¶ 259. But we do not find by reference that Judge Dillon goes further than to say "the council is a body which is constantly changing. It is simply the agent of the corporation, and that authorized acts done by the council are not their acts, but acts of the corporation." This proposition will not be disputed, and it does not help, we think, counsel's contention that this ordinance is a valid act. As we have already shown, it was not an act authorized under the charter. We are not dealing with the question whether it would be within the power of the board of aldermen, notwithstanding the election had intervened, to do certain administrative acts in carrying into

742 COURT OF ERRORS AND APPEALS.

Bergen & Dundee R. R. Co. v. State Bd. of Assessors. 74 N. J. L.

effect street improvements authorized by the charter and by an ordinance duly enacted. That question seems to have been answered in the affirmative by the Supreme Court in *Booth* v. *Bayonne,* 27 *Vroom* 268. That question is not now before us, and it is therefore unnecessary that we should express any opinion thereon. Counsel has further cited, in support of the view that the ordinance was legally enacted by the newly-organized board, the case of *McGraw* v. *Whitson,* 69 *Iowa* 348. The syllabus reads: "Where the law required the reading of the ordinance on three different days, the fact that the third reading was after the annual election and entrance upon office of a new mayor and four new councilmen was held to be a sufficient compliance with it." The case seems to be in point, but the opinion is not supported by the citation of authorities, and appears to express only the view of the judges as to the legislative intent in that particular case. We find ourselves unable to agree with the reasoning of the opinion reaching the result stated. Our conclusion is that the judgment below must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, HENDRICKSON, PITNEY, REED, TRENCHARD, BOGERT, VROOM, GREEN, GRAY, DILL, J.J. 12.

*For reversal*—None.