FRED B. ROTI *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* HAROLD WASHINGTON, Mayor, Defendant and Counterplaintiff-Appellant—(Bobby Rush *et al.* Intervening Counterplaintiffs-Appellants).

First District (4th Division)   No. 83—1146

Opinion filed June 10, 1983.

JOHNSON, J., dissenting.

Donald Page Moore, of Chicago, for appellant Harold Washington.

Jack M. Siegel, of Chicago, for other appellants.

Jann, Carroll, Sain & Dolin, Ltd., Jerome H. Torshen, Ltd., and William J. Harte, Ltd., all of Chicago (Jerome H. Torshen, Abigail Spreyer, David Epstein, Irwin Jann, William J. Harte, and Jeffrey B. Whitt, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

Both the plaintiffs and the defendants in this case have sought the aid of the courts in order to resolve several legal issues that arose during the course of the legislative process. This lawsuit requires the court to address the legal issues stemming from a dispute that arose in the Chicago city council between the plaintiffs, 29 aldermen, and the defendants, 21 aldermen and Harold Washington, the mayor of Chicago. We stress at the onset that this court's function is not to question the wisdom of any legislation or to examine the distribution of power in the city council. Those are legislative concerns which do not bear upon the judiciary's traditional responsibility to decide the rights of the parties. Nor shall this court delve into the many personalities that have been thrust into this highly publicized era of Chicago history. Crucially, this court's sole function in this lawsuit is to decide the legal issues of the case as defined by the plaintiffs and the defendants. In its ruling, the trial court appealed to the parties, "*** to work out their differences, political and personal, to assist Mayor Washington in effecting the goals he has so eloquently expressed, to make our great City a place where the strong are just and the weak secure ***." We join in this plea. In the meantime, we must accomplish the business of this court by deciding the legal issues that have been identified and submitted by the parties to this court for resolution.

The focus of this lawsuit revolves around a meeting of the city council on May 2, 1983. Upon commencement of the meeting, the mayor, acting as the council's presiding officer, entertained a motion to adjourn. A voice vote was taken and the mayor declared that the

motion to adjourn had carried. The mayor and 21 aldermen immediately left the council chambers. After one of the aldermen was elected as temporary presiding officer, the remaining 29 aldermen voted against the motion to adjourn and continued the meeting. The propriety of the mayor's adjournment and the subsequent actions of the remaining aldermen is the first issue submitted by the parties to this appeal.

Following these events, the 29 remaining aldermen adopted by resolution "Rules of Order" for the 1983-87 council. These rules changed the rules from the 1979-83 city council by amending the number of standing committees from 20 to 29. The resolution further assigned aldermen to the 29 committees and elected a vice-mayor, a sergeant-at-arms and a president *pro tempore*. The defendants contend that the resolution is invalid not only because the meeting was allegedly adjourned, but also because the new rules violated a rule of the 1979-83 council that provided that the rules could not be repealed, altered or amended absent a vote by two-thirds of the aldermen. The defendants therefore argue that the changes in the rules were invalid because only 29 aldermen voted for modification, a number five votes shy of the 34 votes needed to comprise a two-thirds majority. In contrast, the plaintiffs argue that the 1979-83 council rules cannot bind the 1983-87 council because each council may enact its own rules of order. These arguments comprise the second issue before this court on appeal.

The final action taken at the May 2 meeting was the passage of an ordinance which set May 6, 1983, as the date of the next regular city council meeting. The mayor vetoed this ordinance but no questions are raised on this appeal concerning this veto.

On May 6, a special meeting of the city council was called for May 7 at the request of 24 aldermen. The purpose of the special meeting was to approve the journal of proceedings for the regular council meetings held on April 13, April 29 and May 2. The minutes of these meetings were adopted by a vote of 29 aldermen and the meeting was adjourned. The minutes for the special meeting were adopted at the next regular council meeting on May 11. The validity of the actions taken at the May 7 special meeting is the third issue raised by the parties on appeal.

At the May 11 meeting, the mayor communicated a message to the council in which he vetoed two of the resolutions which had been adopted at the May 2 meeting by the 29 remaining aldermen. The resolutions at issue concerned changing the number of committees and appointing aldermen to those committees. The validity of these vetoes

is the final issue on appeal.

On May 6, the plaintiffs sought a declaratory judgment in the trial court. Later that day, the mayor filed an action seeking to enjoin the city clerk and the plaintiffs from implementing the rules and resolutions which they had previously adopted. On May 11, the cases were consolidated and the 21 defendant aldermen were allowed to intervene. The city clerk was dismissed from the suit. The cause came to trial on May 13 and the court heard the evidence presented by the parties. On May 16, the court rendered its memorandum decision and on May 17, the judgment order was entered in favor of the plaintiffs. Both the mayor and the intervening aldermen immediately filed appeals and all parties to the suit requested the Illinois Supreme Court to accept the case for direct appeal. The application was denied. The supreme court ordered this court to decide the matter by June 10, 1983. A briefing schedule was established and oral arguments were heard on June 2, 1983.

As a threshold matter, we must first decide whether the mayor lawfully adjourned the May 2, 1983, city council meeting pursuant to a voice vote. Significantly, if the adjournment was proper, the remaining issues in this case become moot and the defendants will prevail on all issues. On the other hand, if we find that the mayor's adjournment was improper, we must determine the other issues raised in the case.

The record reveals that the events surrounding the purported adjournment were emotionally charged and highly tumultuous. However, in essence, the evidence adduced at trial discloses that a regular city council meeting was held on April 29, during which the mayor and all of the aldermen of the 1983-87 city council were inaugurated. At the close of the ceremonies, the meeting was recessed until May 2. When the session was resumed on May 2, the roll was taken. The mayor recognized an alderman who immediately moved for adjournment. The mayor stated, "You've heard the motion. All in favor, signify by saying aye." This statement was followed by a chorus of ayes. The mayor then asked, "Opposed, no?" A chorus of nos followed. The mayor announced, "The ayes have it. Council is adjourned." Immediately thereafter, the mayor left the council chambers accompanied by 21 of the aldermen.

The journal of proceedings of the council meeting reflects that after the motion to adjourn was made but before the mayor called for a voice vote, "various aldermen requested a roll call vote on the motion." The journal does not indicate the names of the aldermen who requested a roll call vote. Another transcript of the proceedings was produced by a court reporter hired by the defendants. This second

transcript reflects that the ruling to adjourn was made after a voice vote but before any request for a roll call was made. Also introduced into evidence were the city clerk's tape recording of the meeting, network video tapes, a transcript produced by a court reporter hired by the plaintiffs, and the stipulated testimony of the city clerk and at least 32 aldermen. The bulk of this evidence reflected that a roll call vote was requested prior to adjournment. The trial court found that "several of the twenty-nine aldermen clearly demanded a roll call vote immediately upon the Mayor's announcement that 'the ayes have it.' " In other words, the trial court concluded that requests for a roll call vote were demanded prior to the time that the mayor purportedly adjourned the meeting and left the chambers.

Following the mayor's exit, an alderman requested the clerk to take a roll call vote on the motion to adjourn. The motion to adjourn was defeated by a vote of 29 to zero. As there are 50 aldermen in the council, 29 votes comprise the majority necessary to defeat a motion to adjourn. The 29 aldermen then continued the meeting and proceeded to take certain actions that will be examined later in this opinion.

Before proceeding further, we must determine whether, as the defendants suggest, the mayor properly adjourned the council meeting and therefore precluded the 29 aldermen from conducting further council business. The defendants raise three arguments relating to the purported adjournment. First, they contend that the trial judge erroneously found that several aldermen requested a roll call vote prior to the purported adjournment. Second, it is argued that even if a roll call vote was requested prior to the adjournment, the 29 aldermen were not entitled to a roll call because the request was not made in the form of a formal motion and because the record does not reveal which specific aldermen requested the roll call vote. Finally, the defendants argue that the mayor did not hear any request for a roll call vote and therefore acted properly in exercising his responsibility as presiding officer of the council to decide all questions of order, subject to appeal. Consequently, the defendants contend that the 29 aldermen were required to appeal the ruling by the mayor to adjourn and that they did not make any such motion.

■■ We will first determine whether the trial judge correctly found that a roll call vote was requested prior to adjournment. We have already detailed the evidence produced at trial by both parties, and we have noted the trial court's conclusion that a roll call vote was demanded prior to adjournment. The parties are in dispute regarding which records of the meeting were properly before the trial court.

Specifically, the plaintiffs argue that only the journal of proceedings may be considered to garner the chronology of events, while the defendants urge that the journal as well as any extrinsic records may be examined. However, we need not reach the heart of this argument because we find that in either event, the trial court's conclusion was proper. If the trial judge looked only to the journal, he would inevitably find that a request was made for a roll call vote prior to adjournment. If the trial judge looked to the journal in addition to the extrinsic records, such as the videotapes and stipulated testimony, he would also find a significant amount of evidence to the effect that a roll call vote was requested prior to adjournment. Significantly, whether the request was timely delivered is a question of fact that rests in the domain of the trial judge. The decision of the trial judge on a factual matter will not be reversed on appeal unless it is against the manifest weight of the evidence. (See *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 379 N.E.2d 1307.) Our study of the record in this case discloses that the trial judge had an impressive amount of evidence before him revealing that a roll call vote was requested prior to adjournment. We therefore cannot say that the trial court's determination of this factual question was against the manifest weight of the evidence.

■■ We must next consider whether the plaintiffs were entitled to a roll call vote even though their request was not in the form of a formal motion and even though the transcripts of the proceedings do not reveal the names of the specific aldermen who requested the roll call vote. The defendants argue that both are prerequisites to the allowance of a roll call vote because the city council may only "operate by motions, resolutions or ordinances." Further, the defendants contend that in the heat of a spirited council meeting, a request for a roll call could be shouted by a member of the audience. Thus, the defendants argue, the name of the alderman requesting the roll call must be identified in order to assure that an alderman is in fact making the request. However, we cannot agree that the plaintiffs must be placed in the procedural straight jacket urged upon them by the defendants.

It is provided by statute that the "yeas and nays shall be taken upon the question of the passage of any other resolution or motion at the request of any alderman and shall be recorded in the journal." (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—17.) Thus, the plaintiffs were statutorily entitled to a roll call vote on the motion to adjourn so long as they complied with the requirements set out in the statute. Significantly, the statute provides that an alderman is entitled to a roll call vote upon his "request." There is no statutory requirement that the

"request" must be in the form of a formal motion. Further, our consideration of the type of situation during which a roll call vote would typically be requested leads us to conclude that, as a practical matter, an attempt to make a formal motion for a roll call vote could conceivably be ignored by the chair or lost in the shuffle of a turbulent council meeting. If the motion could not be stated under such circumstances, an alderman's statutory right to a roll call vote would be lost. Because a roll call vote is the statutory entitlement of any one alderman, a vote on the motion for a roll call vote would be unnecessary and in fact would be improper. We therefore think that a clear vocal request in any form is sufficient to trigger an alderman's right to a roll call vote.

■■ There is also no requirement in the statute that the alderman requesting a roll call vote must be identified by name. The defendants cite Rule 18 of the city council rules, which states, "in all cases where a resolution or motion is entered in the journal, the name of the member moving the same shall be entered also." Rule 18 applies only to motions and not to the situation with which we are concerned here. The journal of proceedings reveals that "various aldermen requested a roll call vote on the motion." We believe that this language is sufficient support for the fact that aldermen rather than members of the audience were the persons requesting a roll call. In addition, the trial court found that the requests were made by aldermen, and we will not reverse its finding on such a factual matter unless it is against the manifest weight of the evidence. Therefore, where the statute does not require the additional procedures urged by the defendants and where the record discloses that certain aldermen did in fact request a roll call vote, we believe that the requesting aldermen were statutorily entitled to a roll call vote even though the request was not a formal motion and the record did not identify the requesting aldermen by name.

Our final concern on the adjournment issue is the defendant's argument that the mayor did not hear a request for a roll call vote and consequently acted properly in exercising his responsibility as presiding officer of the council to decide all questions of order, subject to appeal. The defendants argue that the plaintiffs did not formally appeal the chair's decision on the motion to adjourn and that therefore, the mayor's adjournment was proper. Our determination of this issue revolves around interpretation of the rules of the city council and Robert's Rules of Order. Rule 47 of the council rules adopts Robert's Rules of Order and therefore, Robert's is central to the case before this court.

■ The defendants cite the following rules in support of their position that the mayor's adjournment must stand because there was never a proper appeal from his decision to adjourn:

"[T]he presiding officer shall *** decide all questions of order, subject to appeal." (Council Rules R. 4; see also Robert's Rules of Order Newly Revised sec. 46, at 377 (1970).)

"Any member may appeal to the Council from a ruling of the chair and the member making the appeal may state his reasons for the same, and the chair may explain his ruling; but there shall be no debate on the appeal and no other member shall participate in the discussion ***." (Council Rules, R. 12.)

"By electing a presiding officer, the assembly delegates to him the authority and duty to make necessary rulings on questions of parliamentary law. But any two members have a right to *Appeal* from his decision on such a question. By one member making (or 'taking') the appeal and another seconding it, the question is taken from the chair and vested in the assembly for a final decision.

Members have no right to criticize a ruling of the chair unless they appeal from his decision." Robert's Rules of Order Newly Revised sec. 24, at 218 (1970).

We believe that the rules cited to us by the defendants must be read in conjunction with two other sections of Robert's Rules of Order, which state:

"Unless the bylaws provide otherwise, the assembly itself is the judge of all questions arising which are incidental to the voting or the counting of the votes. In an election by ballot, for example, the tellers should refer to the assembly for decision all questions on which there is any uncertainty." (Robert's Rules of Order Newly Revised sec. 44, at 345 (1970).)

"As explained [above], an appeal is applicable only to a *ruling* by the chair.

No appeal can be made from the chair's response to a parliamentary inquiry or other query, since such a reply is an *opinion* rendered by the chair, not a ruling on a question that has actually arisen. ***

*The chair's announcement of the result of a vote also is not a ruling and is not subject to appeal.* If a member doubts the correctness of such an announced result, however, he should call for a 'division.' " (Emphasis added.) (Robert's Rules of Order Newly Revised sec. 24, at 221 (1970).)

When we read all of these rules together in harmony with the case

law cited to us by parties, we must conclude that a decision to adjourn is not a "ruling" or a "question of order." Rather, the council members, not the mayor, have the authority in the first instance to decide who won a disputed vote on a motion to adjourn. Robert's specifically provides that the chair's announcement of the result of a vote is not a ruling which would be the subject of an appeal. Therefore, the rules cited to us by the defendants are not pertinent to this issue. Rather, we believe that the correct method of clarifying the result of a vote by the council is to request a roll call vote. The record reflects that this was done by a number of aldermen. We do not believe that the mayor's position as presiding officer entitles him to ignore the repeated requests for a roll call vote. As the Illinois Supreme Court stated in *American Aberdeen-Angus Breeders' Association v. Fullerton* (1927), 325 Ill. 323, 327, 156 N.E. 314, "[a] presiding officer cannot arbitrarily defeat the will of the majority by refusing to entertain or put motions, by wrongfully declaring the result of a vote, or by refusing to permit the expression by the majority of its will. He is the representative of the body over which he presides. His will is not binding on it, but its will, legally expressed by a majority of its members, is binding." See also *Rudd v. Sarallo* (1969), 111 Ill. App. 2d 153, 249 N.E.2d 323 (applying preceding observation to mayoral/city council disputes).

Alternately, we believe that even if the mayor's announcement could be considered a ruling which needed to be appealed, we still think that the 29 aldermen acted properly. Specifically, the rules cited by the defendants do not detail any procedures that must be followed in order to appeal the chair's ruling. We think that a request for a roll call and a subsequent roll call vote by the remaining aldermen was a sufficient manner in which to appeal the announcement made by the mayor just prior to his exit. A formal motion to appeal the chair's ruling, which the rules do not necessarily require, and a request for a roll call vote both accomplish the same purpose of informing the presiding officer that his judgment call on the result of a voice vote is open to question. We cannot ignore the realities of the situation with which we are faced in order to impose parliamentary requirements that are demanded by neither the council rules nor Robert's Rules of Order. We therefore find that the 29 aldermen acted properly by requesting a roll call vote and that the city council meeting was not lawfully adjourned by the mayor.

■ After the mayor left the room, one of the aldermen was elected as temporary presiding officer pursuant to statute. (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—15.) The meeting continued with the

plaintiffs in attendance which was a sufficient number to comprise the quorum necessary to conduct the council meeting. The city clerk then took a roll call vote on the motion to adjourn. The motion to adjourn was defeated by a vote of 29 to zero. The meeting then lawfully continued.

■ Having found that the mayor's adjournment was without legal effect and that the subsequent meeting continued lawfully, we must next decide whether the rules of order determined by the plaintiffs at the May 2 council meeting were properly adopted. The purpose of the rules of order is to determine how the routine, internal operation of the city council is to be conducted. The defendants' position is that the city council is a continuing body and that therefore, the rules of order adopted by the 1979-83 council must remain in effect unless they are altered, repealed or amended by two-thirds of the 1983-87 council. The rules of the 1979-83 council were in fact altered by the actions of the 1983-87 council on May 2, 1983. The defendants argue that this alteration was improperly accomplished because Rule 48 of the 1979-83 city council rules provides that:

"These rules *** shall not be repealed, altered or amended unless by concurrence of two-thirds of all the aldermen entitled by law to be elected."

Rule 48 does not include any specific time frame indicating its duration.

The rules of order were adopted by 29 aldermen, five votes less than the number necessary to comprise a two-thirds majority. The plaintiffs counter that although the city council is a continuing body, the rules enacted by the 1979-83 city council do not carry over to bind the 1983-87 council from adopting its own rules of order. In support, the plaintiffs cite section 3—11—11 of the Illinois Municipal Code which provides, "The city council shall determine its own rules of proceeding ***." (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—11.) The plaintiffs also argue that the interpretation of Rule 48 itself as to its duration mandates the conclusion that it was not intended to carry over from the prior council to the present council.

The crux of the problem, as we see it, is whether the 1979-83 council's adoption of Rule 48, an extra-majority rule that prevents repeal, alteration or amendment except by a two-thirds majority, effectively prevents the majority of the 1983-87 city council from making its own rules of order as allowed by section 3—11—11. (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—11.) A great deal of discussion in the briefs centers around the extra-majority issue and the defendants have offered examples of extra-majority rules that have been enacted by the

legislature. (See Ill. Rev. Stat. 1981, ch. 24, par. 11—76—1 (the sale or lease of real estate can only be accomplished by an ordinance passed by three-fourths of the corporate authorities); Ill. Rev. Stat. 1981, ch. 24, par. 11—91—1 (streets and alleys can only be vacated upon a three-fourths vote of the aldermen).) However, a significant distinction lies between the type of law cited to us by the defendants and Rule 48. Those laws provide that certain legislation cannot be *enacted* except by an extra-majority vote. Rule 48 goes one step further than those laws in providing that once enacted, the law which itself creates the two-thirds requirement may not be repealed, altered or amended except by a two-thirds majority. If such were the case, a bare majority could effectively create a rule that anther council could not repeal, alter or amend by its own majority vote. The examples of extra-majority legislation cited to us by the defendants concerning the lease of real estate or the vacation of streets can be repealed, altered or amended by a majority, not an extra-majority, vote. If the majority of a city council can pass a rule such as Rule 48 in order to bind future councils to a two-thirds extra-majority revocation requirement, the exiting council would create, as the plaintiffs have so termed, a rule favoring perpetuities. The past could virtually and irrevocably bind the future.

Section 3—11—11 of the Illinois Municipal Code provides, "The city council shall determine its own rules of proceeding ***." (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—11.) We believe that section 3—11—11 must be read in conjunction with Rule 48 and we conclude that the adoption of Rule 48 by the 1979-83 council, or any previous council, cannot be allowed to effectively prevent the 1983-87 council from determining its own rules of order. Further, we believe that when the 1979-83 council adopted its rules of order, it adopted those rules solely for the 1979-83 session and did not intend to make those rules binding on all future sessions of the city council.

The parties agree that the city council is a continuing body, the existence of which never ceases by reason of a change of membership. The continuing body concept serves as the useful legal fiction needed to accomplish such desirable public policy considerations as protecting the contract rights of persons who had contracted with the previous municipal body, sustaining the existence of a body that can act during periods of transition and affirming the ability of one city council to act upon the uncompleted business of a previous council. See, *e.g.*, *Booth v. Mayor* (1893), 56 N.J.L. 268, 28 A. 381 (completion of proceedings for public improvement); *City of Biddeford v. Yates* (1908), 104 Me. 506, 72 A. 335 (lease to take effect during succeeding term of

office); *Denio v. City of Huntington Beach* (1943), 22 Cal. 2d 580, 140 P.2d 392 (binding effect of contract authorized by prior council); *Schumacher v. City of Clear Lake* (1931), 214 Iowa 34, 239 N.W. 71 (completion of proceedings on special assessment).

We take issue, however, with the defendants' argument that because the city council is a continuing body, the rules of order adopted by the 1979-83 council are *therefore* binding upon the 1983-87 council. An entirely new city council is selected by a majority vote of the citizens of Chicago every four years. While the council as an entity is certainly a continuing body that never ceases to function, we cannot ignore the fact that an entirely new city council is elected every four years to represent the public's interest in conducting the city's business. We think that the 1979-83 council's Rule 48 cannot be read to effectively prevent this city council, newly elected by the voters of Chicago for the 1983-87 term, from enacting its own rules of order. We believe that such a result would be in contravention of the legislature's provision that "The city council shall determine its own rules of proceeding ***." (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—11.) We conclude, therefore, that the rules of the preceding council cannot effectively bind future councils in perpetuity to rules of order for the internal operations of the city council that were deemed just, necessary or desirable by a council no longer in office.

Significantly, whether a city council may pass an extra-majority revocation rule that only remains in effect during the term of the existing council is not in issue in this case. The repeal, alteration or amendment of any rule adopted by the 1983-87 council during the course of its 1983-87 city council term is not before this court. What is at issue here is whether one city council, such as the 1979-83 council, can adopt an extra-majority revocation rule concerning the operation of internal council business that will bind another council, such as the 1983-87 city council. For the reasons above stated, we think not. We find no legal significance in the defendants' argument that the 1979-83 council adopted Rule 48 by more than a two-thirds vote. The central issue here is the propriety of one city council adopting rules that cannot be repealed, altered or amended except by an extra-majority vote of a later city council.

■ In addition to our conclusion that the construction of Rule 48 urged by the defendants is in contravention to the statute, we also find that Rule 48 itself, read in conjunction with the statute, is ambiguous as to its duration. While Rule 48 is certainly clear and unambiguous as to its two-thirds requirement, it gives no hint as to the length of time it is to remain in effect. The defendants argue that because

there is no duration provision, it must be presumed that the rule is of infinite duration unless changed by the specific dictates set out in the rule itself. However, our preceding examination of the statute leads us to conclude that each new council is to determine its own rules of proceeding and that there is no requirement in the first instance that a body must determine its own rules by a two-thirds vote. The evidence presented to the trial court disclosed that excerpts of the journals of the city council from April 1931, through April 1979, revealed that every four years, each new city council adopted its own rules of order *de novo*. Each of those city councils adopted rules which required a two-thirds vote to repeal, alter or amend the rules. We believe that the actions taken by the preceding councils in adopting their own rules of order indicate, at least to a certain extent, that each preceding council did not intend that their temporary rules were to extend beyond the term of the particular city council for which the rules were adopted. We therefore do not believe that it was the intent of the drafters of Rule 48 to bind the 1983-87 city council to the rules enacted by another council, rules that would effectively prevent the 1983-87 council from adopting its own internal rules of order.

■ Both our construction of the statute and our interpretation of Rule 48 lead this court to conclude that each new city council is entitled to adopt its own rules of order, that the 1983-87 council is a new council and that therefore, the 1983-87 council cannot be effectively barred by the 1979-83 council's Rule 48 from adopting its own rules of order. We therefore believe that on May 2, 1983, the plaintiffs acted properly when they adopted internal rules of order for the 1983-87 city council.

The next issue on appeal involves the special meeting of May 7, 1983. On May 6, 1983, 24 aldermen called for a special meeting of the city council scheduled for May 7, 1983, at 3 p.m. The aldermen have the power to do this under section 3—11—13 of the Illinois Municipal Code which states that "any 3 aldermen" may call a special meeting of the city council. (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—13.) The special meeting was called for the "sole and specific purpose of approving the Journal of Proceedings of the City of Chicago, *** of April 13, 1983, Friday, April 29, 1983 and May 2, 1983 and for no other purpose." The call for the special meeting was filed in writing with the city clerk.

At the beginning of the special meeting on May 7, the mayor announced that the call was improper and left the chair. The call was then read and an alderman moved to adjourn the meeting because the call was improper under Robert's Rules of Order. Another alderman

moved to table this motion and the motion was tabled by a verification vote of 29 to 20. The journal of proceedings for April 13, April 29 and May 2 were then adopted by a vote of 29 aldermen and the meeting was adjourned. On May 11, 1983, at the next regular meeting of the council, the journal of proceedings of the special meeting was approved as corrected by a vote of 29 to 21.

■■ On appeal, the defendants argue that the special meeting of May 7 was improperly called and that the actions taken in approving the journal of proceedings for April 13, 29 and May 2 were totally invalid and void. The defendants cite section 47 of Robert's Rules of Order as evidence for this contention. (Robert's Rules of Order Newly Revised sec. 47, at 393 (1970).) Section 47 states that "[a] special meeting *does not* approve minutes; its minutes should be approved at the next regular meeting." (Emphasis added.) Because the council is governed by Robert's Rules, the defendants conclude that a special meeting cannot be called which has as its purpose the approval of minutes.

We cannot agree with the defendants' claim that Robert's Rules precludes the calling of a special meeting to approve minutes. Robert's Rules only governs where they are not inconsistent with the council's own rules. (Robert's Rules of Order Newly Revised sec. 2, at 13 (1970).) The defendants do not dispute this conclusion. The plaintiffs cite us to Council Rule 3(6) as a council rule which is inconsistent with Robert's Rule section 47. Council Rule 3(6) states that the approval of journals is a matter which is to properly come before the council in the ordinary course of business at "All Council Meetings." Furthermore, the wording of Robert's section 47 does not constitute an absolute prohibition against the approval of journal proceedings at special meetings. Section 47 states that "A special meeting *does not* approve minutes; \*\*\*." Section 47 does not say that a special meeting cannot approve minutes.

Because the special meeting was properly called pursuant to the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—13), because council Rule 3(6) empowers the council to approve minutes at any council meeting and because Robert's section 47 does not contain a specific prohibition against approving minutes at special council meetings, we conclude that the actions taken at the special meeting were valid.

■■ The final issue on appeal involves the validity of two of the mayor's vetoes. After the adjournment of the meeting on May 2, 1983, the plaintiffs remained in the council chamber and adopted two resolutions which are at issue here. The first resolution involved adop-

tion of rules which enumerated the standing committees of the city council. All of the old standing committees and nine new ones were enumerated in the resolution, including a committee on finances. The second resolution assigned aldermen to these committees and designated their chairmen. This resolution included the designation of the chairman of the committee on finances.

On May 11, 1983, at the next regularly scheduled meeting of the city council, the mayor communicated a message to the council in which he vetoed these two resolutions. This veto action was based on an opinion rendered by the corporation counsel on May 5, 1983, to the effect that the action taken by the council on these two resolutions was unlawful, void and without effect.

Section 3–11–18 of the Illinois Municipal Code sets out the veto power of the mayor. The section provides:

> "All resolutions and motions (1) which *create any liability against a city*, or (2) which provide for the *expenditure or appropriation of its money*, or (3) *to sell* any city or school property, and all ordinances, passed by the city council shall be deposited with the city clerk. If the mayor approves of them, he shall sign them. Those of which he disapproves he shall return to the city council, with his written objections, at the next regular meeting of the city council occurring not less than 5 days after their passage. The mayor may disapprove of any one or more *sums* appropriated in any ordinance, resolution, or motion making an *appropriation*, and, if so, the remainder shall be effective. However, the mayor may disapprove entirely of an ordinance, resolution, or motion making an *appropriation*. If the mayor fails to return any ordinance or any specified resolution or motion with his written objections, within the designated time, it shall become effective despite the absence of his signature." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 24, par. 3–11–18.)

Under this statute, a two-thirds vote of all the duly elected members is necessary to override the mayor's veto. Ill. Rev. Stat. 1981, ch. 24, par. 3–11–19.

On appeal, the defendants argue that this statute gives the mayor the right to veto all resolutions which create any liability against the city or provide for any expenditure or appropriation of its money. According to the defendants, the first resolution, enumerating the committees and adopting a rule creating a committee on finances, constituted a "liability against the city" because it involves the expense of staffing such committees. The second resolution, according to the

defendants, involves a special appropriation to the chairman of the committee on finances. This is because chapter 4–2 of the Municipal Code of Chicago, which sets aldermanic salaries, provides that the chairman of the finance committee will receive a salary of $31,400. (Municipal Code of Chicago (1982), ch. 4–2.) Since this salary is $3,500 more than standard aldermanic salaries, the extra $3,500 is characterized by the defendants as involving a special appropriation.

After reviewing the language of the resolutions, we cannot agree with the defendants' conclusion that these two resolutions involve appropriations, expenditures or create a "liability against the city." The two resolutions do not contain any language which authorizes expenditures or appropriations or which indicate that any such expenditures or appropriations are intended. The first resolution merely enumerates committees and does not provide for the staffing of the committees by paid employees. The plaintiffs correctly observe that the expenditure appropriation of the city's money to these committees is dependent upon future resolutions or ordinances of the council and is not accomplished by this resolution. The second resolution, contrary to the defendants' claims, does not provide for a special appropriation of $3,500 to the chairman of the committee on finances or in any way appropriate his base salary of $31,400.

The defendants make one more argument concerning the validity of the mayor's vetoes which we find to be unconvincing. The defendants claim that the two resolutions at issue here are in fact ordinances because of their importance. Thus they are legislative acts which are subject to the mayor's veto. The defendants cite a corporation counsel opinion of June 26, 1915, and *People v. Mount* (1900), 186 Ill. 560, 58 N.E. 360. We fail to see how these authorities turn the two resolutions into ordinances and then make them subject to the mayor's veto.

Because we are mindful that statutory veto powers of local government chief executives are to be strictly construed in Illinois and the veto power includes only those which are expressly encompassed in the statutory grant of power (*Winokur v. Rosewell* (1980), 83 Ill. 2d 92, 414 N.E.2d 724) and because we cannot find any language in the resolutions which authorize expenditures, appropriations, or create any liability against the city, we conclude that the mayor exceeded his statutory veto powers in attempting to veto these resolutions.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

ROMITI, P.J., concurs.

JOHNSON, J., dissenting:
I strongly dissent from the position taken by the majority. I would reverse.

Because of certain omissions in the majority opinion, I present this statement of facts.

On April 29, 1983, the mayor and the newly elected members of the city council were sworn into office. The council recessed until May 2, 1983, when it convened with the mayor presiding. The mayor called the meeting to order and the clerk called the roll. There are two versions of what occurred after the invocation. According to Accurate Reporting Services, the following occurred:

"MAYOR WASHINGTON: The president recognizes Alderman Natarus.

ALD. NATARUS: I move we adjourn.

MAYOR WASHINGTON: You've heard the motion. All in favor, signify by saying aye.

CHORUS OF AYES.

MAYOR WASHINGTON: Opposed, no?

CHORUS OF NOS.

MAYOR WASHINGTON: The ayes have it. Council is adjourned."

According to McGuire's Reporting Service, the following occurred:

"ALDERMAN NATARUS: Mr. President?

MAYOR WASHINGTON: The Chair recognizes Alderman Natarus.

ALDERMAN NATARUS: I move we adjourn.

(A Chorus of requests for roll call.)

MAYOR WASHINGTON: The meeting is adjourned.

(A Chorus of requests for roll call.)"

At a hearing on this matter, there were conflicting stipulations as to whether there was a call for a roll call prior to adjournment. The stipulations were to the effect that various aldermen would testify as to when the call for a roll call was made. Some aldermen would testify that the call was made before the adjournment while others would testify that the call came after the adjournment. After the mayor announced the adjournment, he and 21 aldermen left the city council chambers.

Alderman Vrdolyak assumed the chair and asked for a roll call vote on the motion to adjourn. The vote was 29 to zero against adjournment. With Vrdolyak as chairman, the following five resolutions

were passed by votes of 29 to zero:

(1) A resolution providing for change in the council's rule of order that increased the standing committees from 20 to 29 and providing for eight other changes;

(2) A resolution providing for the assignment of aldermen to the 29 committees;

(3) A resolution providing for the election of a vice-mayor;

(4) A resolution providing for the election of a sergeant-at-arms; and

(5) A resolution providing for the election of a president *pro tempore*.

A resolution was also passed setting Friday, May 6, 1983, at 10 a.m., as the time for the next council meeting. Prior to the meeting, the mayor vetoed the ordinance setting a meeting for May 6, 1983. On that day, 24 aldermen called for a special meeting on May 7, 1983, for the purpose of approving the journal of proceedings of the city council for April 13 and 29, 1983, and May 2, 1983. The journals were approved by the 29 plaintiffs on May 7, 1983.

On May 11, 1983, the council met at its regularly scheduled meeting, which is the second Wednesday of each month. The mayor announced that he had vetoed two of the five resolutions passed on May 2, 1983—the resolution changing the rules of procedure of the council and the resolution naming members to city council committees. One of the reasons the mayor objected to the resolutions was that black council members were denied participation in the formulation of the rules and committee memberships. Of the 58 chairmanships and vice-chairmanships, blacks were selected for only eight positions. The council approved the journal of the special meeting on May 7, 1983, by a vote of 29 to 21.

On May 6, 1983, plaintiffs filed a complaint for declaratory judgment and injunctive and other relief against the mayor, asking that the resolutions adopted at the May 2, 1983, meeting be declared lawfully adopted. On that day, May 6, the mayor filed a complaint against the city clerk and the 29 aldermen asking that the actions taken subsequent to the adjournment on May 2 be declared void and illegal and that they not be published as part of the journal of proceedings of the city council. On May 11, 1983, these lawsuits were consolidated and the other 21 aldermen were allowed to intervene on behalf of the mayor.

After a hearing on May 13, 1983, the trial court issued a 22-page memorandum opinion that adopted the arguments advanced by plaintiffs in their pretrial memorandum. The trial court held that the may-

or's adjournment of the May 2, 1983, city council meeting was illegal; that the five resolutions for which the 29 aldermen voted after the purported adjournment were lawful; that the mayor had no authority or jurisdiction to veto any of the resolutions; and that there was a proper call for a special city council session on May 7, 1983. The trial court declared its order final and appealable. On May 17, 1983, the trial judge signed his judgment order and stayed its effect for 30 days.

I will address the following issues: (1) whether the meeting of the city council on May 2, 1983, was properly adjourned by the mayor on a voice vote; (2) whether the city council could adopt a resolution changing the rules without a two-thirds vote; (3) whether the call for a special meeting for May 7, 1983, for the purpose of approving the city council journal of the proceedings was valid; and (4) whether the mayor's veto of the purported resolutions was valid if in fact those resolutions were properly adopted.

*Adjournment Issue*

The first issue raised by this appeal is whether the meeting of the city council on May 2, 1983, was properly adjourned by the mayor on a voice vote. The majority opinion affirms the trial court's holding that the adjournment was illegal. Before addressing the decision made by the majority on this issue, it is necessary that I discuss the burden of proof.

Generally the plaintiff has the burden of proof as to all the elements of his claim or cause of action. (18 Ill. L. & Prac. *Evidence* sec. 21 (1956).) In this case, defendant countersued. Therefore, the burden of proof is complicated but should have been decided by the trial court at the onset.

Plaintiffs alleged that the mayor acted contrary to law. Since it is presumed that a public official acts in good faith (18 Ill. L. & Prac. *Evidence* sec. 27 (1956)), plaintiffs have the burden of proving that the mayor acted illegally. In my opinion, plaintiffs did not meet this burden of proof for the following reasons:

(1) There was no evidentiary hearing. The hearing on May 13, 1983, consisted of stipulations and argument of counsel. There was conflict as to when the demand for a roll call occurred.

(2) In the judgment order, the trial court merely concluded that the mayor acted illegally, and the order contained no findings of fact. Thus, the conflict was never resolved.

The majority seems willing to presume (based solely on the trial court's conclusion of illegality) that the trial court followed the proper

steps in arriving at its decision. It is improper for the majority to make this assumption because appellate review is premised upon the idea that trial courts may err in the process of reaching a decision.

In the absence of any indication in the record that this burden of proof had been sustained, the trial court's ruling should be reversed. At the very least, the cause should be remanded for findings of fact.

The majority's recitation of events surrounding the adjournment and its evaluation of the evidence presented to the trial court predetermines its conclusion that the mayor illegally adjourned the meeting. The majority notes that the journal of the proceedings of the city council indicates that a demand for a roll call was made before the mayor called for a voice vote. However, the majority ignores the fact that the mayor, in his complaint, asked the trial court to declare that the proceedings following his adjournment not be published as part of the journal. The majority also notes that the bulk of the evidence indicated that several aldermen demanded a roll call after the mayor announced, "The ayes have it." It neglects to mention that 26 aldermen who are plaintiffs and only six of the intervenors submitted stipulations. The bulk of the stipulations would necessarily favor plaintiffs' view of the events.

The majority concludes that the trial court's conclusion that the demand for a roll call vote occurred prior to adjournment was not against the manifest weight of the evidence. I believe the trial court did not have sufficient evidence to conclude that the mayor improperly adjourned the meeting. It used evidence of what happened later as evidence of what happened earlier, i.e., the trial court reached the conclusion that a majority supported a roll call at the time the motion to adjourn was made because a majority later voted not to adjourn.

The majority holds that plaintiffs were entitled to a roll call vote under section 3—11—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—17), which provides in part that the "yeas and nays shall be taken upon the question of the passage of any other resolution or motion at the request of any aldermen and shall be recorded in the journal." The majority found that language in the May 2, 1983, journal of proceedings was sufficient to support the conclusion that aldermen requested the roll call. In other words, the majority states that aldermen requested a roll call because the journal said so. Again, the majority ignores the fact that the mayor sued to prevent the printing of that journal entry and that the journals' account of the proceedings represents plaintiffs' view. Furthermore, even accepting the majority's view that an informal request for a roll call was permissible, plaintiffs have not established that a resolution or motion

was before the council in accordance with section 3—11—17.

The next issue involving adjournment that the majority addresses is what it describes as "the defendants' argument that the mayor did not hear a request for a roll call vote and consequently acted properly in exercising his responsibility as presiding officer of the council to decide all questions of order, subject to appeal." The majority states that its determination of this issue revolves around interpretations of city council rules and Robert's Rules of Order. The majority's discussion contains the seeds of its own reversal. The majority takes the position that there were no rules until the council "created" them. Robert's Rules of Order apply to city council proceedings by virtue of council Rule 47, which provides as follows:

> "The rules of parliamentary practice comprised in the latest published edition of 'Robert's Rules of Order Newly Revised' (1970 Edition) shall govern the Council in all cases to which they are applicable and in which they are not inconsistent with the special rules of this Council."

Since the majority states that there were no rules, Robert's Rules of Order did not apply at the time the mayor adjourned the meeting.

The majority states that the mayor could not ignore repeated requests for a roll call vote and quotes from *American Aberdeen-Angus Breeders' Association v. Fullerton* (1927), 325 Ill. 323, 156 N.E. 314. I do not disagree with the rule of law stated in that case. However, in my opinion, the instant case does not involve misfeasance by the mayor. Plaintiffs have not established that a proper request for a roll call was made, nor have they established that the mayor acted improperly.

I do not understand the majority's statement that it "cannot ignore the realities of the situation with which we are faced in order to impose parliamentary requirements that are demanded by neither the Council rules nor Robert's Rules of Order." The majority states that plaintiffs were bound by no rules until they created them, and yet it can rule on an issue for which it should concede no rules were available. It seems to me that, in such a case, the majority should dismiss the issue as nonjusticiable.

Additionally, the trial court substituted its judgment for that of the mayor. The mayor is the presiding officer of the city council (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—14). In that capacity, it was his duty to decide whether, when he made the call for a vote to adjourn, the motion had passed or failed based on what he observed. This was a judgment call.

A recurring theme in judicial review is that the reviewing court

does not substitute its judgment for that of the trial court. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) A familiar standard is that a reviewing court will not reverse absent a showing of abuse of discretion. (2 Ill. L. & Prac. *Appeal & Error* sec. 751 (1953).) In like manner, the circuit court should not have substituted its judgment for that of the mayor absent a showing of abuse of discretion. Circuit judges are not elected to preside over the Chicago city council, but mayors are.

The question of whether the adjournment of the May 2, 1983, meeting was proper necessarily turns on a finding of fact. The transcripts contain two versions; the journal of proceedings contains another. The trial court did not have sufficient facts to resolve the conflict. Plaintiffs did not meet their burden of proof.

Although this case should be reversed on the adjournment issue, to fully respond to the majority opinion, I must address the issue of whether the city council has the authority to change its rules of procedure without a two-thirds majority vote as required by council Rule 48.

### Rule 48 Issue

To resolve this case, the court must first answer the question of whether the Chicago city council is a continuing body. I note at this juncture that everyone involved in this lawsuit, *i.e.*, the parties, the trial judge, the majority of this court, and myself, agrees that the council is a continuing body. Agreement, however, ends at this point, since plaintiffs and the majority take the position that although the city council is a continuing body its rules of procedure do not continue from one quadrennial period to the next.

The majority states that Rule 48 deprives the current session of the city council of the right to determine its own rules of procedure. I disagree. The current members of the city council are free to amend, repeal or otherwise alter any rules of procedure. However, they must do so in accordance with established procedural guidelines and not by tacit implication as was done here.

Rule 48 provides:

"These rules may be temporarily suspended by a vote of two-thirds (⅔) of all the aldermen entitled by law to be elected, and shall not be repealed, altered or amended unless by concurrence of two-thirds (⅔) of all the aldermen entitled by law to be elected."

It is well settled that the language used in a statute should be given its plain, ordinary meaning. (*City of East Peoria v. Group Five*

*Development Co.* (1981), 87 Ill. 2d 42, 46, 429 N.E.2d 492, 494.) Moreover, the statute should be considered in its entirety (*S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 64, 284 N.E.2d 257, 262), so that no word, clause or sentence is rendered meaningless or superfluous. *City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 47; *Illinois Bell Telephone Co. v. Fox* (1949), 402 Ill. 617, 628, 85 N.E.2d 43, 50.

"[C]ourts start with the assumption that the legislature intended to enact an effective law." (*Pliakos v. Liquor Control Com.* (1957), 11 Ill. 2d 456, 459, 143 N.E.2d 47, 49.) Thus, in ascertaining and giving effect to the intentions of the legislature, courts should avoid an interpretation which defeats, nullifies, destroys, emasculates, repeals, explains away or renders insignificant, meaningless, inoperative, or nugatory the statute being construed. (11 Ill. 2d 456, 460; *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 65.) The same rules which govern the construction of statutes also govern the construction of municipal ordinances. *City of East St. Louis v. Union Electric Co.* (1967), 37 Ill. 2d 537, 542, 229 N.E.2d 522, 524; *Village of Park Forest v. Wojciechowski* (1963), 29 Ill. 2d 435, 437, 194 N.E.2d 346, 348; *City of Nameoki v. City of Granite City* (1950), 408 Ill. 33, 37, 95 N.E.2d 920, 922.

Thus, when a court looks to the language of an ordinance or statute enacted by a law-making body to ascertain and to give effect to the intention of the law-making body, a court must give the statute a sensible interpretation (*Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 410, 118 N.E.2d 295, 305), and not do violence to the spirit and language of the act. (*S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 64-65.) The intent of the legislature must be determined as of the time of the enactment. As the court in *Dean Milk Co. v. City of Chicago* (1944), 385 Ill. 565, 571, 53 N.E.2d 612, 615, stated:

> "Expediency, born of changing circumstances and conditions, will not alter the meaning of plain and ordinary language used in an ordinance."

The clear language of Rule 48 provides that with the concurrence of two-thirds of all the aldermen entitled by law to be elected, the rules may be repealed, altered or amended. There is no basis for the assertion, which the majority accepts, that the rule may "never" be altered, amended or revoked. This characterization flies in the face of the settled principles of looking at the language used in the statute.

The question still remains to be answered; did the aldermen follow proper procedure to amend or repeal Rule 48.

The majority interprets the provision of the Illinois Municipal

Code (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—11), which states: "The city council shall determine its own rules of proceeding" to mean that each rule will be adopted *de novo* at the beginning of each four-year session. On this basis, the majority finds that Rule 48 was not binding on the current session of the city council. I reject this reasoning and its conclusion. The majority fails to cite the journal of proceedings or any other authority for their position.

While conceding that the city council is a continuing body, the majority allows continuity in an ethereal sense but disallows continuity in a practical sense by reasoning that the newly elected council members should not be prevented from enacting its own rules. I submit that the newly elected council members like a newly elected slate of board of directors in any corporation may enact its own rules but only in accordance with the rules or statutes in effect at the time they assume office. All amendments must comply with the rules governing amendments. (See *Cain v. Lyddon* (1931), 343 Ill. 217, 175 N.E. 391; *City of Carbondale v. Wade* (1902), 106 Ill. App. 654.) "It is horn-book law that an ordinance of a municipality may be repealed, modified, or amended only by municipal action of like dignity." *DuMond v. City of Mattoon* (1965), 60 Ill. App. 2d 83, 89, 207 N.E.2d 320, 323.

A review of the journal of proceedings fails to show any motion to amend or repeal Rule 48. I have been unable to find in the record of this case any vote by the city council on Rule 48. It is a fundamental legal principle that a legally adopted law or rule continues in effect until it is repealed or amended. Therefore, the rules of procedure in effect at the time of the dispute on May 2, 1983, required a vote of two-thirds of council members in order to amend or repeal. Thus, on May 2, 1983, the 29 aldermen simply proceeded to conduct the city council business against the background of the existing rules, including Rule 48.

Unlike the majority, I do not speculate about what the city council might have intended or might have done. It is not the function of this court to engage in speculation but, rather, to assure that the existing rules are followed. Rule 48 is an existing rule, and the city council is bound by it.

Since none of the resolutions at issue here was enacted by the two-thirds majority required by Rule 48, none has legal validity. It was improper for the majority to conclude that Rule 48 was not binding on plaintiffs where the language of the rule neither implied a durational limit nor automatic termination. The majority's conclusion is based on an assumption of the continued validity of Rule 47 as well as an assumption that Rule 48 terminates at the end of the legislative

session. Nowhere does the majority explain why some rules evaporate at the end of the legislative session while others do not. There is good explanation for this: no reason exists. Either the rules of the city council continue or they do not. Either all the parties were bound by all of the rules or none was bound.

*The May 7, 1983, Special Meeting Issue*

The next issue raised by this appeal is whether the call for a special meeting on May 7, 1983, for the purpose of approving the city council journal of proceedings was valid. On May 7, 1983, plaintiffs approved the proceedings of the city council for April 13 and 29, and May 2, 1983, by a vote of 29 to zero. I have stated above that plaintiffs did not prove the illegality of the adjournment and that adoption of the resolutions required a two-thirds vote. Thus, the actions of plaintiffs taken after the mayor left the city council chambers are null and void, and the propriety of the call for the May 7, 1983, meeting requires no further discussion.

*The Veto Issue*

There is also an interesting question raised about the authority of the mayor to veto the resolutions of the city council. The mayor and intervenors state that since the resolutions necessarily will result in financial liability to the city, the mayor has statutory veto power (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—18). Plaintiffs state that no liabilities of any kind are created and the resolutions do not contain any language that authorizes expenditures or appropriations and that none were intended.

In view of my conclusion that the resolutions lack legal validity in the first place, it is both unnecessary and inappropriate for this court to rule on the validity of the mayor's veto powers. Neither should the court indulge in speculation without a sufficient case or controversy and there is none as to that issue.

*Conclusion*

There can be little doubt that this case is both politically and emotionally charged. In such situations, it is more necessary than ever for the court to concentrate its attention on basic methods of legal analysis and decision-making: who had the burden of proof; was it sustained; are the applicable rules being applied consistently and equally. In this dissent, I have attempted to focus on the basics. My analysis leads me to the conclusion that the trial court has erred and its holdings should be reversed.