Albert Anthony Triolo, Administrator of Estate of Richard Triolo, Deceased, Plaintiff-Appellant, v. Phillip Frisella, Joseph Paravala, Steve Cicero and Jasper Cipolla, Defendants-Appellees.

Gen. No. 10,733.

Opinion filed August 3, 1954. Released for publication August 20, 1954.

ROBERT W. KUEBLER, and STANLEY H. GUYER, both of Rockford, for appellant; STANLEY H. GUYER, of Rockford, of counsel.

KNIGHT, HAYE & KEEGAN, SAM J. CANNARIATO, MATHEW P. CICERO, and ANGELO N. GAZIANO, all of Rockford, for appellees.

Opinion *Per Curiam.*

Plaintiff brought suit to recover damages for the alleged wrongful death of his son, a five and one-half year old minor. The single count under which the case was tried was in the usual form in an action for wrongful death and, in substance, charged the defendants with negligence in cutting down a tree, the complaint averring that the defendants negligently failed to trim, top, or otherwise treat said tree and negligently failed to choose and guide its direction of fall as a result of which it, in falling broke a high tension electrical wire which entwined itself around deceased causing his electrocution and death. Each defendant was represented

by separate counsel and the answers of each denied all the allegations of the complaint. The case was tried before a jury which returned verdicts finding each defendant not guilty. Plaintiff's motion for a new trial was denied and from judgments entered on those verdicts the plaintiff prosecutes this appeal.

There is very little dispute as to the facts in this case. The deceased lived with his father and mother and baby sister in a house located on the west side of Court Street in Rockford. Court Street extends north and south. The intersecting east and west street to the north of deceased's home is Montague Street and the east and west street to the south is Knowlton Street. From the exhibits it appears that Knowlton Street is what is commonly referred to as a side street of a city in contrast to a main travelled thoroughfare. The house in which deceased lived is the second house north of Knowlton Street.

Defendant Paravala lived on the south side of Knowlton Street just west of Court Street. The corner lot on the southwest corner of Knowlton and Court Streets fronts on Knowlton, has a house on it and is 75 feet wide. Paravala lived in the next house west and his lot is 50 feet wide. His house is set back from the sidewalk some distance. Defendant Frisella lived next door west of Paravala and defendant Cipolla lived next door west of Frisella. Defendant Cicero lived across the street. The defendants were all friendly neighbors.

On the morning of the occurrence, the father of deceased left for work early in the morning, leaving the deceased and his baby sister with their mother. Later that morning the mother went downtown to do some shopping and left deceased and his sister with her mother who lived in a flat upstairs. The grandmother had previously kept the children whenever the occasion required.

On the same morning defendant Paravala called upon his neighbors Frisella and Cicero to help him cut down a tree in his front yard. Defendant Cipolla later joined the group at Paravala's request. The tree in question was about 18 inches in diameter, 45 or 55 feet in height and was located about 25 feet south of the sidewalk and about 4 feet from the west property line of Paravala's lot. The front of Paravala's house was on the south of the tree and except for the tree the front yard was open and unobstructed. Extending up and down Knowlton Street on the south side at the curb line were poles carrying electric light wires at a height of about 40 feet.

Admittedly none of the defendants had had any previous experience in cutting down a tree. Admittedly no topping or trimming of the upper branches was done. They commenced the operation by Paravala climbing a ladder and affixing a 100-foot electric lamp cord some distance above the base of the tree. Paravala, Frisella and Cicero then started sawing and chopping on the west side of the trunk near the base. When the sawing and chopping were about completed Cipolla joined the group and he with Frisella, Paravala and an unidentified negro started pulling the lamp cord to the east in order to drop the tree. Frisella testified that Cipolla did some chopping. Cipolla denies this.

During the course of the foregoing operations, the deceased was in the custody of his grandmother who was walking the two children back and forth from their house north to Montague Street. On a return trip to the house, she heard the phone ring and picked up the baby and went in to answer it. She left the deceased standing at the front door and was gone not to exceed two minutes. While she was inside the deceased wandered south to Knowlton Street, crossed the street and stood on the parkway about 25 feet west from the corner to apparently watch the tree fall. In this position

he was approximately 100 feet east of the standing tree and completely out of range of any part of the falling tree. In addition the photographs disclose that there was another large tree standing in the front yard of the corner lot between him and the falling tree which further protected him.

As a result of the sawing and chopping and pulling the tree finally fell. Instead of falling east it fell in a northeasterly direction, striking and breaking the high tension electric wires. One end of the wire flipped around in the air and finally dropped on and encircled the deceased electrocuting him and causing his death. Upon these facts the jury found defendants not guilty.

The first and major assignment of error has to do with the instructions. A total of 96 instructions were tendered to the court. The plaintiff tendered 15 and 3 were given; the defendant Paravala tendered 29 and 12 were given; the defendant Frisella tendered 28 and 5 were given; the defendant Cicero tendered 7 and all 7 were given; and the defendant Cipolla tendered 17 and 13 were given. Two additional instructions were given being the first two bearing numbers 1 and 42 which were cautionary, and the record does not show by whom these were tendered. Of plaintiff's three given instructions, two of them related solely to damages and the other set forth the provisions of the Wrongful Death Act. It is interesting to note the sequence of the giving of the instructions. The first two cautionary instructions were followed by plaintiff's three instructions. Then followed 37 instructions for the defendants. Many of these were duplicates except that they were applied to different defendants. Many of the instructions repeated parts of other instructions which had been previously given. For example instructions number 27 and 38 are identical except that number 27 refers to one defendant and 38 to another. The same is true as to numbers 29 and 41 and of instructions 26 and

36. Instructions 31 and 9 are practically identical and 11 and 32 are identical. Instructions 32 and 34 are for all practical purposes identical and apply to the same defendant. Instructions numbered 23, 30, 35 and 17 are all substantially the same except that each applies to a different defendant. These last-mentioned instructions in varying language are the stock instructions telling the jury that before plaintiff can recover he must prove the following propositions, one, two and three and if he fails to prove any one or all the verdict should be for the defendant, naming him. We cannot help but observe in passing that with the undue burden cast upon the trial judge by counsel for defendants tendering a total of 81 instructions, it is small wonder that there were not more duplications.

The most objectionable feature about defendants' instructions is that 23 of them direct a verdict. On 23 occasions during the reading of these instructions the jury heard the trial judge say: "You must find this or that defendant not guilty" or "the plaintiff cannot recover." We call attention to the foregoing in such detail, for to us it seems to be an aggravated example of counsel not heeding the repeated admonitions of the courts of review of this State.

 Counsel seek to justify this unusual situation by contending that each defendant had the right to instruct on his theory of the law. This statement overlooks several principles which hardly need citations to support. The instructions as to the law are the instructions of the court and not of individual counsel or parties. Counsel prepare the instructions as an aid to the court. They likewise have a duty to assist the court in settling on a set of instructions which fully and yet concisely state the law as it affects all parties to the case. No good reason suggests itself why counsel for defendants could not have cooperated to produce a single set of instructions applicable to all defendants

205

instead of tendering four sets applying to each defendant separately. They cooperated on the trial. The record is replete with instances where counsel for one defendant would make an objection, and, taking the cue, other counsel would follow suit. In this court they have joined in a single brief. Furthermore in our view of this particular case the defendants were all acting in unison in producing a common result, i. e. the felling of the tree. The negligence, if any, of one cannot be set apart from the negligence of the others. They are either all guilty or they are all not guilty.

██ ██ The case cited by appellees to the effect that each defendant was entitled to instruct relative to his individual rights is not in point. Conceivably where different causes of action are alleged by several plaintiffs or where different acts of negligence are charged against different defendants this may be true. Even in such situation certain instructions are common to all. But such is not the situation in the instant case. Here the defendants were charged in the complaint jointly with the same thing, i. e. negligently failing to trim and top the tree and properly guide its direction of fall. Admittedly no one topped or trimmed the tree so that if such be negligence under the circumstances (which is a question for the jury to decide) then all are guilty. The elements entering into the charge of failing to properly guide the direction of fall of the tree are the sawing, chopping, placing of the pull cord and the pulling. The sawing cannot be separated from chopping and these in turn from the placing of the pull cord and these in turn from the pulling. It takes the composite of all to accomplish the result. Here again, if the composite be negligence under the circumstances (which is the jury question), then all are guilty. Counsel make a point of the fact that three of the defendants were acting gratuitously and as an accommodation to the other

206

defendant. The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise care and skill in what he has undertaken. Even a stranger or a volunteer is liable for an injury negligently inflicted on the person or property of another (38 Am. Jur. 659, Negligence, Sec. 17. *Roesler v. Liberty National Bank of Chicago,* 2 Ill. App.2d 54, 118 N.E.2d 621). The good Samaritan incurs a responsibility avoided by those who "pass by on the other side."

■ In *Baker v. Thompson,* 337 Ill. App. 327, 85 N.E.2d 924, in strong language, we held it to be error to give 14 peremptory instructions. More recently in *Ashby v. Einig,* 2 Ill.App.2d 600, 120 N.E.2d 64, we held the giving of 7 "not guilty" instructions to be erroneous. The Appellate Courts of other districts have done likewise (*Gulich v. Ewing,* 318 Ill. App. 506, 48 N.E.2d 537 and *Williams v. Stearns,* 256 Ill. App. 425). We therefore hold that in this case the giving of 23 "not guilty" instructions is, of itself, sufficient error to require a reversal and the granting of a new trial.

It would unduly prolong this opinion to examine each of the given instructions. Just a casual examination reveals that many of them do not correctly state the law applicable to this case. We call attention to a few by number, namely: 13, 17, 18, 19, 20, 37 and 39.

■ Counsel for plaintiff also contends that the verdicts are against the manifest weight of the evidence. Under the law, because of his age, decedent could not be deemed guilty of contributory negligence (*Wall v. Greene,* 321 Ill. App. 161, 52 N.E.2d 303; *Duffy v. Cortesi,* 2 Ill.2d 511, 119 N.E.2d 241), and as this case must be tried again, we refrain from expressing any opinion as to the weight of the evidence upon the question of the contributory negligence of the next of kin of deceased or the negligence of the defendants.

For the reasons given, the judgments as to all defendants are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. PRESIDING JUSTICE ANDERSON took no part in the consideration or decision of this case.