**Darwin C. Rudd, Plaintiff-Appellee, v. Richard F. Sarallo and Lorraine M. Fik, Defendants-Appellants.**

**Gen. No. 68–196.**

Second District.

June 27, 1969.

Ancel, Stonesifer and Glink, and Stewart H. Diamond, of Chicago, for appellants.

Thomas F. Pierce, of Chicago, for appellee.

PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court.

This case involves a controversy between the mayor and city council of the City of Oak Brook Terrace in Du Page County. At the time of the trial the plaintiff was the mayor of the city, the defendant Sarallo an alderman, and the defendant Fik, the city clerk.

In 1966 a controversy arose between the mayor and council concerning the appointment of the building commissioner. The mayor's nominees were not approved by the council and the mayor periodically appointed acting commissioners. From January 1, 1967, until the commencement of this cause, the mayor himself approved the building permits issued in the city.

At the council meeting of July 23, 1968, one of the aldermen presented an ordinance for second reading and consideration by the council, which provided that thereafter requests for building permits would be directed to the city council's committee on building and zoning, which committee would include the building commissioner and that the chairman of the committee would be empowered to approve or disapprove permits in lieu of the mayor. The mayor refused to permit a reading or consideration of the ordinance. A motion was made to appeal his decision and all four aldermen present voted in favor of the appeal. It is to be noted at this point that the city council of Oak Brook Terrace comprises six aldermen, four of whom were present at the meeting in question. Following the appeal, a motion was made to adopt the ordinance. Again the mayor refused to recognize the motion, but upon roll call being taken, the four aldermen voted to adopt the ordinance. The mayor took no subsequent action. He did not sign the ordinance and he did not veto it. Instead, he brought this action to enjoin the enforcement of the ordinance. Pursuant to the prayer of the mayor's complaint, the trial court entered the injunction, holding that the mayor's action in refusing to recognize the various motions was proper and that if he was wrong the remedy was an action against him for malfeasance in office.

The defendants brought the case to this Court raising these issues: (1) that the ordinance was properly adopted, and (2) that the ordinance is valid.

The ordinances of the City of Oak Brook Terrace covering the duties of the mayor and council relating to procedure, provide in part as follows: "The presiding officer shall preserve order and decorum and may speak to points of order in preference to other members, and shall decide all questions of order subject to appeal." In addition, the city council has adopted Robert's Rules to

govern its procedure. We note from the ordinance itself that the mayor is not authorized to absolutely "decide all questions of order" but rather that his decisions are "subject to appeal."

By statute the mayor presides at all meetings of the city council. He is not a voting member, however, and may only vote in three instances set forth in the statute. (Ill Rev Stats 1967, c 24, § 3–11–14.) If the mayor does not agree with a particular ordinance he has the power to veto (Ill Rev Stats 1967, c 24, § 3–11–18), but even if the mayor does veto an ordinance his veto may be overridden and the ordinance approved by a two-thirds vote of all of the aldermen then holding office. (Ill Rev Stats 1967, c 24, § 3–11–19.) Even if the mayor refuses or fails to approve an ordinance which was done in this case, the ordinance becomes effective despite the absence of his signature. (Ill Rev Stats 1967, c 24, § 3–11–18.)

The mayor's position in this case is that he has sole power to determine whether or not an ordinance or motion is valid. If he determines that it is not valid, then it cannot be considered by the city council. We do not understand that position to be the law. Neither the mayor nor city council is supreme. Each has its rights and duties prescribed by statute; each has its limitations. Even if the mayor does not believe that a particular motion or ordinance is valid, it can still be considered by the city council. His remedy is not to refuse the right to consider but, rather, to veto the ordinance. Even in that event, if two-thirds of the aldermen favor the adoption of the ordinance, it is adopted. Though it may subsequently be proven in court to be invalid, the remedy is in the courthouse and not in the mayor's office.

This precise point appears to be a first impression in Illinois and that may well be because it is to the benefit of all citizens for local officials to resolve their own problems rather than split the city apart by internal

156

bickering. In the case of Hicks v. Long Branch Commission, 69 NJL 300, 54 A 568, 55 A 250, 251 (1903), the Court of Appeals of New Jersey held that the chairman, elected by his fellow commissioners, was only a presiding officer and, if a motion was duly made, he must recognize it. If he refused to do so, any member of the commission could put the motion to a vote. The Court expressly dispelled the theory that the only remedy for the commissioners would be to try the chairman for malfeasance and remove him from office. In the case of Attorney General ex rel. Andrews v. Remick, 73 NH 25, 58 A 871, 873-874 (1904), the mayor refused to submit a proposition to the council, left the platform and announced that the meeting was adjourned. Thereafter the council proceeded with the question at hand. The Supreme Court of New Hampshire upheld the right of the council and found that the mayor's power was not absolute, but qualified, and that he was bound by the rules of procedure of the council. A similar result followed in Kaeble v. Mayor of Chicopee, 311 Mass 260, 41 NE2d 49, 51 (1942). In all these cases the mayor or chairman was elected first as a member of the board and then elected to his position by his fellow council members. That, of course, is not the case of the typical mayor in Illinois. We do not find this to be a distinguishing feature, however, because a mayor of a city under Illinois law does not have absolute power. He is bound by the ordinances of the city and among those ordinances are the rules of procedure of the city council. To that extent he is in no different position than anyone else. All are bound, including the mayor.

The only Illinois authority on the question appears to be the case of Golden v. City of Toluca, 108 Ill App 467 (1902). In that case an attorney who had revised the city ordinances had not been paid and sued the city to recover for services. The action was initiated when a motion was made at the council meeting to revise the ordinances. The mayor refused to put the motion, at which

157

point the city clerk put the motion and called the roll. The Court held that the motion had not properly passed because the city clerk, who was not a member of the council, was not authorized to put the motion. The Court said at page 470: "There is no provision of the law that anyone else may preside when the mayor is present. 'The functions of the presiding officer are as official as any part of the meeting of the board and cannot be exercised by one who is not a member.'" In addition, it also appeared in that case that the council had not adopted any rules of procedure and, of course, the city clerk was not a member of the council. We believe the decision in the Golden case should be limited to the facts of that case. Since the time of that decision in 1902, almost every municipality has improved their procedure. They all have rules of conduct. The Golden case has never been cited by any Illinois court until today. The decision is narrow, covering the facts there presented. Those facts do not exist in this case.

The case of American Aberdeen-Angus Breeders' Ass'n v. Fullerton, 325 Ill 323, 156 NE 314 (1927), concerned the validity of actions taken at an annual meeting of a private association. The president of the association, who was acting as chairman of the meeting, refused to permit a motion or appeal. The membership assumed control and transacted business. The Supreme Court held that this was proper. The Court said, "A presiding officer cannot arbitrarily defeat the will of the majority by refusing to entertain or put motions, by wrongfully declaring the result of a vote, or by refusing to permit the expression by the majority of its will. He is the representative of the body over which he presides. His will is not binding on it, but its will, legally expressed by a majority of its members, is binding." Admittedly, that case does not involve a mayor and city council, but it seems to us that the principles announced correctly state the law.

158

As a practical matter, if the mayor has absolute power, then there is no need to have a city council. The system of checks and balances, which is the brilliant creation of our founding fathers, applies to the municipalities of this state as well as to the state and national government. That system prevents the untrammeled use of power and permits action to be taken when that action is agreed upon by a majority in a lawful manner.

■ We conclude, therefore, that the mayor had no power to refuse consideration of the ordinance. The ordinance was properly presented and duly passed.

The validity of the ordinance itself is challenged because it is argued that the ordinance vests a nonlegislative duty in a member of the legislative body, namely one of the aldermen. We note, however, that the ordinance does not purport to give the alderman any authority or any discretion in interpreting or enforcing the law. The law is adopted by the city council and the only remaining act is ministerial, that is, to grant the permit if the application complies and to refuse it if the application does not comply.

The ordinance in question does not vest executive authority in an alderman. It does not make him the building commissioner and he does not hold another city office by virtue of the ordinance. Ill Rev Stats 1967, c 24, § 3–4–3 provides, in part, "No mayor, alderman, city clerk or city treasurer shall hold any other office under the City government during his term of office . . . ." The word "office" as used in the Illinois Municipal Code is a word of art. It refers to a position held by a person who is an officer of the municipality by virtue of his appointment to that position. It does not include mere city employees but only officers and the holders of "office." The fact that under this ordinance one of the aldermen may approve building permits does not make him the building commissioner and it does not make him an officer of the municipality for that purpose, nor did it make the plain-

tiff mayor an officer when he was issuing the permits under the prior ordinance. We note that under section 3-7-1 of the Municipal Code (Ill Rev Stats 1967, c 24, § 3-7-1), other than in the case of elected officials, it is the city council who establishes the "offices" of the city but they did not do so by this ordinance.

In the exhaustive treatise, McQuillin on Municipal Corporations, this matter is discussed and it is there provided that, "Municipal legislative bodies may reserve to themselves when they do so by an ordinance containing a rule or standards to govern them, the power to grant or deny licenses or permits," section 25.217, McQuillin on Municipal Corporations.

 Therefore, we conclude that the ordinance in question is proper. It does not vest any alderman with another "office" and does not violate any provision of the Constitution or the laws of this State.

The case is, therefore, reversed and remanded to the trial court with instructions to dissolve the injunction previously issued and dismiss the case.

Reversed and remanded with instructions.

ABRAHAMSON and DAVIS, JJ., concur.