**CINCINNATI INSURANCE COMPANY,**
Plaintiff-Appellant,

v.

**CITY OF TAYLORVILLE, et al.,**
Defendants-Appellees.

No. 86–1730.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1986.

Decided May 12, 1987.

Ronald H. Isroff, Ulmer-Laronge-Glickman-Curtis, Cleveland, Ohio, for plaintiff-appellant.

Karen L. Kendall, Heyl-Royster-Voelker-Allen, Peoria, Ill., for defendants-appellees.

Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This diversity case arose out of a fire that occurred on the night of February 20, 1979, at the Nashville North County Music Hall, Inc. ("Nashville North"). The music hall is located just outside the city limits of Taylorville, Illinois. For property located outside city limits, the Taylorville Fire Department operates on a subscription-only basis: one must subscribe to the Taylorville Fire Association in order to get fire protection. Nashville North's owner, William Mann, had not subscribed even though the fire association had solicited him to do so. As a result when the Taylorville Fire Department was first notified of the fire, it refused to respond.

Nashville North was insured by the Cincinnati Insurance Company, which reimbursed Mann $238,105.39 for the fire damage to the hall. Subsequently, the Cincinnati Insurance Company, as subrogee to the rights of Nashville North filed suit against four defendants: the City of Taylorville; the Taylorville Fire Association;[1] Keith Evrley, the Chief of the Taylorville Fire Department; and Daniel Reese, the Mayor of the City of Taylorville (hereinafter collectively referred to as "the city"). The complaint contained three counts, all arising out of the city's failure to extinguish the fire in a timely manner. Count one alleged willful and wanton misconduct in failing to order fire fighting operations; count two alleged a violation of 42 U.S.C. § 1983; and count three alleged ordinary negligence.

On May 1, 1984, the city filed a motion for summary judgment on all three counts of the complaint. On March 22, 1985, the district court granted the city's motion as to the § 1983 claim.[2] As to plaintiff's state law claims, the court ruled that a jury trial would be necessary to resolve disputed issues of fact relative to whether the city's actions on the night of the fire gave rise to a voluntarily assumed duty to extinguish the blaze. However, the district court granted partial summary judgment on the issue of whether certain Taylorville ordinances created any statutorily-defined duties to respond to fires outside the city limits.

The case was tried before a jury and on April 9, 1986, at the close of plaintiff's case, the district court granted the city's motion for a directed verdict on the ground that the city had assumed no duty to plaintiff to fight the fire at Nashville North before Mann became a member of the fire Association.

Plaintiff now appeals the district court's grant of partial summary judgment for the city on the issue whether Taylorville ordinances created a statutory duty on the part of the city to respond to fires outside city limits, and the district court's grant of a directed verdict in favor of the city on the issue whether the city voluntarily assumed a duty to fight the fire before Mann joined the association. We affirm.

---

* Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. The district court later dismissed the Taylorville Fire Association as a party defendant.

2. The parties agreed to trial before a magistrate pursuant to 28 U.S.C. § 636(b)(2).

## I.

In June 1970, the City of Taylorville enacted Ordinance 1554 giving the Taylorville Fire Department authority to honor calls requesting the fire department to make a run outside the city limits whenever "in the opinion of the Fire Chief ..., the answering and responding to such calls will not render fire protection for the [city] inadequate." The city charged $300 for each run, plus $100 for each hour after the first hour spent on fighting the fire, the fee to be collected after the fire.

In 1977, after finding it difficult to collect these fees after-the-fact, the city approved a second ordinance, Ordinance 1818, designed to replace Ordinance 1554. This new ordinance established a "Fire Protection Association" to provide fire protection to property located outside the city limits. The ordinance required persons who wanted fire protection to join the association by submitting an application. The association would then assess its members an annual fee determined by a schedule contained in the ordinance. The ordinance also provided that fire protection would not be rendered to parties owning property located outside the city limits unless those individuals were members of the association. The new ordinance became effective on January 1, 1978.

On at least two occasions after the city enacted the new ordinance, Keith Evrley, the Chief of the Taylorville Fire Department, personally visited the Nashville North County Music Hall to drop off an application. On the second visit, Evrley talked with William Mann, Nashville North's owner, about joining the fire association. At that meeting, Mann told Evrley that he would show the membership application to his lawyer and get back to him; Mann never showed the application to his lawyer, never got back to Evrley, and never returned the application.

During the late evening of February 20, 1979, an unknown individual reported to the Taylorville Fire Department dispatcher that a fire had broken out at Nashville North. Because Nashville North was outside the city limits and had not joined the association, the dispatcher did not have the fire department respond, a proper action under department policy. The dispatcher, however, did notify Evrley, who immediately went to the scene. William Mann and Mayor Daniel Reese were also informed. Reese, under the mistaken belief that Mann was a member of the association, apparently told the dispatcher at that time that "the [fire department] better put out that fire."

When Mann arrived at Nashville North, the fire apparently was still quite small. Upon encountering Evrley, Mann was told that the fire department was prohibited from responding to the fire under Ordinance 1818 because Mann was not a member of the association. Mann testified that he asked Evrley at that time to let him join but that Evrley refused to let him do so. In addition to seeing Evrley and Mann, a number of witnesses also testified to seeing a fire truck at the scene and other Taylorville Fire Department employees.

About this time, Reese called Evrley, who was still at the scene, on a radio phone. Evrley informed Reese that Mann was not a member of the fire association, and Reese agreed with Evrley that the city was prohibited from responding to the fire. Subsequently, Reese and Mann's attorney, Frank Schweitzer spoke by phone. They agreed to meet immediately at the fire station. Also present at that meeting were Mann and Evrley. There is some dispute as to what was said at the meeting. However, all agree that Mann was permitted to join the association, that Evrley made up the application which Mann signed, and that Mann paid a $100 fee. Upon completion of the application procedure, Evrley ordered the fire department to extinguish the fire, which it did. According to the fire department log, the department responded to the fire at 1:25 a.m. By this time, however, the fire had done considerable damage to the music hall.

## II.

### A.

We first consider the appropriateness of the district court's directing a verdict in favor of the city on the issue whether the

city had assumed a voluntary duty to fight the fire at a point before Mann became a fire association member.

 In diversity cases, this court applies the state standard of review to the trial court's decision to grant or deny a directed verdict. *Davis v. FMC Corp.,* 771 F.2d 224, 229 (7th Cir.1985); *Gonzalez v. Volvo of America Corp.,* 752 F.2d 295, 301 (7th Cir.1985). In Illinois "verdicts ought to be directed ... only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern Railroad Co.,* 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1967). This formulation does not require a complete absence of evidence supporting the side against whom the verdict is directed; however, there must be a substantial factual dispute before a jury trial is required. *Id.* at 504–05, 229 N.E.2d at 504. Because we agree with the district court that the plaintiff failed to prove an essential element of its negligence case—the existence of a duty owed by the city to the plaintiff—we conclude that the district court properly directed a verdict in favor of the city on the assumption of duty issue.

### B.

Under Illinois law, the determination of any question of duty—that is, whether the law imposed upon a defendant the obligation to protect the plaintiff against the consequences which occurred—is normally a question of law to be determined by the trial court. *Barnes v. Washington,* 56 Ill.2d 22, 305 N.E.2d 535 (1973); *Clinton v. Commonwealth Edison Co.,* 36 Ill.App.3d 1064, 344 N.E.2d 509 (1976). Under certain circumstances, however, the duty question can be a question of fact. A jury question exists only when: (1) the facts giving rise to the duty are disputed; and (2) the facts as alleged by plaintiff could support imposing such a duty. If, however, the facts as alleged by the plaintiff, as a matter of law, could not support finding such a duty, then the duty question is to be decided by the

court even if the facts giving rise to the alleged duty are disputed.

Plaintiff acknowledges that under Illinois law municipalities are not liable for failing to supply police or fire protection. *Huey v. Town of Cicero,* 41 Ill.2d 361, 243 N.E.2d 214 (1968). However, plaintiff points out that Illinois recognizes the so-called "good Samaritan rule" whereby one "who attempts to do anything, even gratuitously for another [is required] to exercise care and skill in what he has undertaken." *Triolo v. Frisella,* 3 Ill.App.2d 200, 121 N.E.2d 49 (1954). Thus, plaintiff argues that because the city "affirmatively undertook to fight the fire virtually from the minute it was first reported to the Taylorville police dispatcher ... [the city] assumed a duty to ... complete the fire-fighting operations with ordinary care." (Plaintiff-Appellant's Reply Br. 3).

To support this conclusion, plaintiff relies on the following evidence which it claims when "viewed in its aspect most favorable" does not "so overwhelmingly favor movant that no contrary verdict based on the evidence could ever stand." *Pedrick,* 37 Ill.2d at 510, 229 N.E.2d at 513–14.

To begin with, plaintiff points out that the Taylorville police dispatcher, some six minutes after receiving the first report of the fire, advised the Central Illinois Public Service to shut off the utilities at the Nashville North Music Hall, and that Fire Chief Evrley testified that turning off the utilities was a "large part" of fighting a fire. Second, plaintiff cites evidence showing that approximately 35 minutes after the first report of the fire, Mayor Reese contacted the dispatcher and told her that the fire department "better put out that fire," and to send out a fire truck "if needed." Mayor Reese, however, also testified that at the time he made those statements he was unaware that Nashville North had not paid the fee necessary to become a member of the fire association. When Evrley apprised Reese of these facts, as well as the fact that on at least two occasions Evrley had visited Nashville North with an application for association membership, Reese

agreed with Evrley that the fire department was obligated to follow Section five of Ordinance 1818 which prohibited the city from responding to a fire under these circumstances.[3]

Finally, plaintiff points to testimony which established that before Mann joined the association on the night of the fire, Chief Evrley was on the scene, that a fire truck and firemen in uniform were on the scene, and that Evrley himself, upon first arriving, circled the building and looked inside with a flashlight to determine whether anyone was inside. Plaintiff also points to Mann's own testimony that Everett Nation, who was at the time Taylorville's acting chief of police, was on the scene and helped Mann attempt to fight the fire with a hose that Mann had in the back of his truck.

Our review of the evidence, however, leads us to agree with the finding made by the district court at the close of plaintiff's case that a directed verdict was proper because

> no duty ... [existed] upon the city to provide ... fire protection until they started to do it, and they didn't start to do it until after the money was paid and the application filled out. That was when they actually took the affirmative, positive act to put the fire out. Up to that point, they hadn't done anything to put the fire out ... the fact is that the city didn't assume the duty, they didn't start to do anything.

(Plaintiff-Appellant's App. A27–28).

This finding is consistent with Illinois case law and with the rationale behind the assumption of duty doctrine. In almost all cases in which Illinois courts have found defendants liable for negligently performing a voluntary undertaking, the defendant somehow placed the plaintiff in a more vulnerable position than he would have been in had the defendant never taken any action at all. This was accomplished by either increasing the danger, misleading the plaintiff into the belief that it had been removed, or depriving him of the possibility of help from other sources. *See e.g., Cross v. Well Fargo Alarm Services,* 82 Ill.2d 313, 412 N.E.2d 472 (1980); *Pippin v. Chicago Housing Authority,* 78 Ill.2d 204, 399 N.E.2d 596 (1979); *Chisolm v. Stephens,* 47 Ill.App.3d 999, 365 N.E.2d 80 (1977). *See also Jackson v. City of Joliet,* 715 F.2d 1200, 1203 (7th Cir.1983) ("Rationale [behind good Samaritan rule] is that other potential rescuers (if any) will be less likely to assist if they see that someone is already at scene giving aid.").

In this case, the city's actions on the night of the fire did not give rise to any voluntarily assumed duty. To begin with, the city did not create the peril in which Nashville North found itself; at the time the city was notified the fire was already in progress. At worst, therefore, the city's refusal to fight the fire constituted nothing more than a "failure to become an instrument for good." *H.R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 167, 159 N.E. 896, 898 (1928). Nor did the fact that city employees and equipment were on the scene, or that Evrley checked the building to determine whether it was empty, create any increased danger, cause plaintiff to believe that the danger had been removed, or deprive the plaintiff of the possibility of help from other sources.

[redacted] Finally, that Mayor Reese when first notified of the blaze indicated that the fire department ought to respond is irrelevant. Reese's testimony is clear that when he was fully advised of the facts, he agreed with Evrley that Ordinance 1818 prevented the city from fighting the fire. Because Ordinance 1818 clearly provides that "fire protection service *shall* not be rendered to parties situated outside the [city] limits" who are not members of the fire association, Reese was bound by the substance of that ordinance and did not have the power to make unilateral exceptions. *See Rudd v. Sarallo,* 111 Ill.App.2d 153, 249 N.E.2d

3. Section 5 provides:

> [E]xcept pursuant to prior, mutual aid agreements with other fire protection districts and associations and except as hereinabove provided for, fire protection shall not be rendered to parties, associations, entities or premises situated outside the limits of the City of Taylorville.

323 (1969). Moreover, for a voluntary duty to arise in this type of situation it must stem from the affirmative act of actually fighting the fire itself and cannot spring into existence based on a misinformed statement indicating that something ought to be done.

This case also differs significantly from cases which plaintiff cites in support of its argument for an assumed duty. For example, in *Miralago Corp. v. Village of Kenilworth*, 290 Ill.App. 230, 7 N.E.2d 602 (1937), firemen fought a fire in a building outside the city limits for 30 minutes when the city shut the water off. At that time the "fire was practically killed." Shortly thereafter the fire reignited and the building was destroyed. Although the court found the city immune from suit, the court nevertheless noted that the city, having voluntarily assumed to provide water to fight the fire, was under a duty to continue providing water until the fire was totally extinguished. Similarly, in *Triolo v. Frisella*, 3 Ill.App.2d 200, 121 N.E.2d 49 (1954), the defendants volunteered to help a neighbor cut down a tree in his front yard. The tree fell, hit some electrical wires, and the wires electrocuted a small boy. The court found that even though the defendants were acting gratuitously, the law imposed upon them a duty to exercise reasonable care.

*Miralago* and *Triolo* are readily distinguishable from the facts of the instant case where the city's alleged negligence involves nonfeasance (the failure to perform) and not, as plaintiff mistakenly claims throughout its brief, misfeasance (the failure to perform properly). Plaintiff's reliance on *Miralago* and *Triolo* begs the crucial question whether the city actually undertook to extinguish the fire some time before Mann subscribed to the Taylorville Fire Association. In other words, neither *Miralago* nor *Triolo* can support plaintiff's claim that the city voluntarily assumed a duty to extinguish the blaze "virtually

from the minute it was first reported" for in both those cases the defendants had clearly begun to act and therefore had the corresponding duty to exercise due care. As unfortunate as we might find the circumstances here—a fire of which the city is aware but does nothing to extinguish— we nevertheless cannot conclude that the city undertook to fight the blaze at any time before Mann joined the association and Evrley gave the order to send the fire trucks out.

### C.

In addition to arguing that the city assumed a duty to fight the fire at Nashville North shortly after it started, plaintiff contends that the district court erred in directing a verdict because "considerable evidence at trial tend[ed] to show that ... [the city] undertook, by [its] actions prior to the night of the fire, to fight any fire which might occur at Nashville North...." (Plaintiff-Appellant's Br. at 6–7).

To support this claim, plaintiff points to evidence presented at trial showing: (1) that before Mann purchased the land for Nashville North he spoke with city officials to insure that water from the city would be available to the music hall; (2) that Mann entered into a written agreement with the city providing that Mann would construct a water line and that the city would provide water as well as a fire hydrant for the facility; (3) that Evrley discussed fire prevention suggestions with Mann before construction of the Hall in addition to developing a "pre-plan" (a plan for fighting a fire) for Nashville North;[4] and (4) that Evrley testified that the fire department considered fire prevention the "first defense" against fires. Plaintiff thus contends that this evidence would have been sufficient for a jury reasonably to find that the city began to fight the fire at Nashville North "long before it actually occurred and ... owed ... a duty to complete the fire fight-

---

4. According to Evrley's testimony, a "pre-plan" is a fire-fighting device developed at the time a building is constructed covering such things as which hydrant will be used in the event of a fire, what kind of trucks and other kinds of

equipment will likely be needed, and approximately how much manpower will be necessary. In the event of a fire, the fire department activates the plan.

ing operations with ordinary care." (Plaintiff-Appellant's Br. at 8).

█ Plaintiff has cited no authority to support this overly broad interpretation of the good Samaritan rule. We therefore agree with the finding of the district court that these activities are "too far afield, too unrelated to impose [a voluntary] duty on the City.... The water line, the fire hydrant ... are preliminary matters that have no relationship ... as to whether or not the City ever assumed its duty. [These] are all matters [that are not] within the alphabet of the rules as to whether the City assumed a duty to fight the fire." (Plaintiff-Appellant's App. A26–27).

### D.

We consider finally plaintiff's argument that evidence was presented at trial from which the jury could reasonably have found that the city's actions caused it to assume a "special duty" to plaintiff. Although, as we have noted, under Illinois law a municipality is not liable for failure to provide adequate police or fire protection, this rule does not apply where the municipality has assumed a special duty to a person that elevates his status to something more than a member of the general public. *See Huey v. Town of Cicero,* 41 Ill.2d 361, 243 N.E.2d 214 (1961).

The special duty exception to the general municipality no-liability rule requires the following: (1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff was exposed; (2) plaintiff must allege specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilfull in nature; and (4) the injury must occur while plaintiff is under the direct and immediate control of employees or agents of the municipality. *Marvin v. Chicago Transit Authority,* 113 Ill.App.3d 172, 176, 68 Ill.Dec. 786, 446 N.E.2d 1183, 1186–87 (1983).

Here, assuming arguendo that plaintiff could satisfy elements 2 and 3 of the above test, plaintiff has failed to produce evidence that the city assumed a special duty to plaintiff under the remaining two ele-

ments. To begin with, even viewing the evidence in the light most favorable to plaintiff, it would not support a finding that the city was "uniquely aware of the particular danger or risk to which the plaintiff was exposed." Plaintiff argues that the particular risk to which it was exposed was the fact that Nashville North was not a member of the Taylorville Fire Protection Association and thus was not entitled to fire protection. The special duty rule, however, requires not only that the municipality be aware of the risk to which the plaintiff was exposed, but that it be *uniquely* aware. Plaintiff argues that evidence was presented at trial from which a jury could have found that the city was uniquely aware of the risk because plaintiff asserts the evidence showed that "Evrley knew ... that Mann was unaware of the fact that the City would not provide him with protection in the event of a fire." (Plaintiff-Appellant's Br. 9).

The evidence, however, does not support plaintiff's contention. There is undisputed evidence that well before the night of the fire and sometime after the passage of the ordinance establishing the Taylorville Fire Protection Association, Evrley personally visited Nashville North on two separate occasions with applications for membership. On the first visit, Evrley delivered an application to Mann's secretary. After Evrley failed to receive a response, he dropped by Nashville North again. This time Evrley spoke to Mann himself, and personally handed an application to him. The evidence reveals that on this second visit Mann told Evrley that he would have his attorney review the application for membership in the association, and that he would get back to him. Mann never sent the document to his attorney for review and Mann never got back to Evrley. Although Mann testified that he believed he had fire protection whether he belonged to the association or not, the evidence does not support the plaintiff's contention that Evrley knew that Mann was unaware of the fact that the city would not provide him with fire protection and thus was "uniquely

aware" of the risk that this state of affairs posed to plaintiff.

Nor does the evidence support a finding that Nashville North's injuries occurred while it was under the "direct and immediate control" of Taylorville's employees. Simply because city employees were on the fire scene and had some contact with William Mann that night does not support a finding that the municipality had direct control over the place where the fire occurred. *See Marvin v. Chicago Transit Authority,* 113 Ill.App.3d 172, 68 Ill.Dec. 786, 446 N.E.2d 1183 (1983); *see also Long v. Soderquist,* 126 Ill.App.3d 1059, 82 Ill. Dec. 80, 467 N.E.2d 1153 (1984). In fact, Evrley specifically told Mann that because Mann had not joined the association, he would not order the fire department to put out the fire. Accordingly, we agree with the district court that a jury could not have reasonably found that the city assumed a special duty to plaintiff.

■ In sum, we find that plaintiff failed to show that the city assumed either an ordinary or a special duty to fight the fire at Nashville North. The district court therefore correctly granted the city's motion for a directed verdict on this issue.

### III.

We next consider the question whether the district court erroneously granted the city's motion for summary judgment on the grounds that neither Taylorville Ordinance 1554, nor Taylorville Ordinance 1818, imposed upon the city a duty to fight the fire at Nashville North. We conclude that summary judgment was appropriate on this issue.

Taylorville Ordinance 1554, which took effect on July 1, 1970, set forth a fee for service system for property located outside city limits. Section 1 provided that the fire department was "authorized and empowered" to honor calls outside the city limits for a set fee "whenever in the opinion of

the Fire Chief or Acting Chief, the answering and responding to such calls [would] not render fire protection for the City inadequate."

The pay-as-you-go program contained in Ordinance 1554 apparently proved unworkable and on January 1, 1978, a second ordinance (no. 1818) designed to replace Ordinance 1554, became effective. This new ordinance established a "fire protection association" which one could join for a fee and which would then "furnish fire protection service to property located outside [city] limits." Section 2 of Ordinance 1818 contained an application requirement for membership in the newly-created fire protection association, and Section 5 further provided that "except as hereinabove provided for, fire protection service shall not be rendered to parties, associations, entities, or premises situated outside the limits of the City of Taylorville." Finally, Section 6 stated that "the provisions of other City of Taylorville Ordinances, to the extent they duplicate, conflict with or otherwise affect the validity hereof, shall be disregarded." [5]

Plaintiff contends that the district court incorrectly held that, as a matter of law, neither of these two ordinances created a duty to extinguish the fire at Nashville North. Plaintiff submits: (1) that Ordinance 1818 did not properly repeal Ordinance 1554; (2) that Ordinance 1818 was invalid because it was not properly published as required by Illinois law; (3) that Ordinance 1554 imposed a mandatory duty upon the city to provide fire protection to Nashville North; and finally (4) that even if Ordinance 1818 properly repealed Ordinance 1554, a question of fact exists regarding whether the city breached any duties created by Ordinance 1818.

■ Because we agree with the district court that neither Ordinance No. 1554 nor Ordinance 1818 created a duty on the part of the city to fight the fire at Nashville

---

5. Approximately one year after the fire at Nashville North, the city enacted a third ordinance, Ordinance 1959, designed to amend Ordinance 1818. The new ordinance provided in relevant part that: Membership in the Taylorville Fire

Association shall not be granted for the purpose of permitting the Taylorville Fire Department to respond or otherwise act in respect to fires then in progress.

North, we need not decide which ordinance was in effect on the night of the fire.

In Illinois, it is "well-established that where a municipality acts in a governmental capacity for the protection of the general public, it will not be liable for a failure to furnish effective protection to a particular individual to whom it owes no special duty." *Hannon v. Counihan*, 54 Ill. App.3d 509, 513, 12 Ill.Dec. 210, 214, 369 N.E.2d 917, 921 (1977) (quoting *Ascrizzi v. Kaufman*, 57 A.D.2d 643, 644, 393 N.Y. S.2d 216, 218 (1977)). Thus, where an ordinance is enacted to benefit the public health and safety, and where its enforcement is a governmental function rather than a ministerial act, the ordinance does not give rise to any special duty to any particular person different from the public at large. *Stigler v. City of Chicago*, 48 Ill.2d 20, 268 N.E.2d 26 (1971) (alleged failure of city to enforce its housing code provided no basis for liability); *O'Fallon Development Co. v. City of O'Fallon*, 43 Ill.App.3d 348, 2 Ill.Dec. 6, 356 N.E.2d 1293 (1976) (individual plaintiff cannot maintain a cause of action against city for negligence in performing its duty to general public to protect public property from subversion to purely private uses).

Here plaintiff does not dispute the principle that ordinances that are enacted for the general public do not create enforceable duties to individuals. However, plaintiff argues that the city did not enact Ordinances 1554 and 1818 for the protection of the general public, but for the protection of a limited class of particular and identifiable individuals: those persons owning property outside the city limits but within a reasonable distance from Taylorville. So, for example, plaintiff argues that Ordinance 1818 is by its terms designed to provide protection to those who are eligible to join, and have joined, the Taylorville Fire Association and not to protect the public at large.

We cannot accept plaintiff's view of what is meant by legislation enacted for the protection of the general public. By plaintiff's definition, any law that names a class is not enacted for the benefit of the general public. Plaintiff, however, fails to recognize

that virtually all legislation specifies classes of persons. Under plaintiff's understanding of a law designed to apply to the public at large, property taxes would not be enacted for the public good since property taxes apply only to the limited class of persons who own property. Similarly, laws covering motor vehicle inspections or licensing requirements would not be enacted for the protection of public health and safety because they apply only to automobile owners and drivers.

In the instant case, Ordinances 1554 and 1818 were designed to benefit those members of the general public living outside the incorporated limits of the City of Taylorville. We thus reject plaintiff's contention that the ordinances at issue here evinced a clear intent to identify and protect a particular and circumscribed class of persons and therefore that they created a duty which obligated the city to respond to and fight the fire at Nashville North. As the Supreme Court of Illinois has stated:

> If the failure of the city to enforce [an] ordinance [enacted to benefit the public health and safety] should render it liable for injuries sustained ... the tremendous exposure to liability would certainly dissuade the city from enacting ordinances designed for the protection and welfare of the general public, and thereby the general public would lose the benefit of salutory legislative enactments.

*Stigler*, 48 Ill.2d at 24–25, 268 N.E.2d at 29.

Accordingly, we affirm the district court's order granting the city's motion for summary judgment on the grounds that neither Ordinance 1554 nor Ordinance 1818 imposed any duty on the city to fight the fire at Nashville North.

### IV.

Plaintiff makes a number of arguments regarding the exclusion of certain evidence at trial that we have not discussed in this opinion. We have given careful consideration to those arguments, however, and we find that they do not alter our conclusions. The district court thus correctly granted the city's motions for a directed verdict on the voluntary assumption of duty claim and

for summary judgment on the statutory duty claim. The district court's judgment is therefore

AFFIRMED.